**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAM SOLOMON, Individually and on Behalf of All Others Similarly Situated, | **Case No.** |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| PELOTON INTERACTIVE, INC., BARRY MCCARTHY, ELIZABETH F. CODDINGTON, and JILL WOODWORTH, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Sam Solomon ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Peloton Interactive, Inc. ("Peloton" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Peloton securities between

1

May 10, 2022 and May 10, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Peloton operates an interactive fitness platform in North America and internationally.  The Company manufactures, markets, and sells, *inter alia*, its Peloton Bike, which is an exercise bike equipped with a touch screen for streaming live and on-demand fitness classes. The Company markets and sells its Peloton Bikes nationwide through Peloton and Dick's Sporting Goods stores, as well as online at Onepeloton.com, Amazon.com, and Dicksportinggoods.com.

3.      In 2021, Peloton was mired in controversy after the U.S. Consumer Product Safety Commission ("CPSC") issued an urgent warning to stop using the Company's treadmill products because of risks of injury and death posed to children and pets in the vicinity of those products. At first, Peloton vehemently denied the CPSC's claims, but was ultimately forced to recall the treadmill products while publicly apologizing for attempting to refute the agency's warnings. Peloton has since assured investors, consumers, and the overall market that the Company has worked cooperatively with the CPSC to further enhance the safety of its products, while signaling a decrease in the need to book additional reserves for potential future product recall expenses, in an attempt to regain the public's trust and repair its damaged brand and reputation.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the seat posts for certain of the Company's Peloton Bikes were prone to break or otherwise detach during use, rendering them unsafe for users; (ii) as a result, the Company was likely to recall millions of

Peloton Bikes; (iii) accordingly, Peloton overstated its efforts to enhance the safety of its products, understated its estimated future returns, and downplayed the Company's need to book additional reserves for future product recall expenses; (iv) all the foregoing, once revealed, was likely to negatively impact the Company's business and financial results and reputation; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On May 11, 2023, the CPSC issued a product recall affecting roughly 2.2 million Peloton Bikes, stating that "[t]he bike's seat post assembly can break during use, posing fall and injury hazards to the user."

6.      On this news, Peloton's Class A common stock price fell $0.67 per share, or 8.9%, to close at $6.86 per share on May 11, 2023.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Pursuant to Peloton's most recent annual report on Form 10-K, as of July 29, 2022, there were 308,398,530 shares of the Company's Class A common stock outstanding.   Peloton's Class A common stock trades on the Nasdaq Stock Market

("NASDAQ"). Accordingly, there are presumably hundreds, if not thousands, of investors in Peloton's Class A common stock located in the U.S., some of whom undoubtedly reside in this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Peloton securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Peloton is a Delaware corporation with principal executive offices located at 441 Ninth Avenue, Sixth Floor, New York, New York 10001. Peloton's Class A common stock trades in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "PTON".

14.     Defendant Barry McCarthy ("McCarthy") has served as Peloton's Chief Executive Officer at all relevant times.

15.     Defendant Elizabeth F. Coddington ("Coddington") has served as Peloton's Chief Financial Officer ("CFO") since June 13, 2022.

16.     Defendant Jill Woodworth ("Woodworth") served as Peloton's CFO from before the start of the Class Period to June 13, 2022.

17.     Defendants McCarthy, Coddington, and Woodworth are sometimes referred to herein as the "Individual Defendants."

18.     The Individual Defendants possessed the power and authority to control the contents of Peloton's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Peloton's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.   Because of their positions with Peloton, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

19.     Peloton and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Peloton operates an interactive fitness platform in North America and internationally.   The Company manufactures, markets, and sells, *inter alia*, its Peloton Bike, which is an exercise bike equipped with a touch screen for streaming live and on-demand fitness classes. The Company markets and sells its Peloton Bikes nationwide through Peloton and Dick's Sporting Goods stores, as well as online at Onepeloton.com, Amazon.com, and Dicksportinggoods.com.

21.     In 2021, Peloton was mired in controversy after the CPSC issued an urgent warning to stop using the Company's treadmill products because of risks of injury and death posed to children and pets in the vicinity of those products.   At first, Peloton vehemently denied the CPSC's claims, but was ultimately forced to recall the treadmill products—namely, the Tread and

5

Tread+—while publicly apologizing for attempting to refute the agency's warnings. Peloton has since assured investors, consumers, and the overall market that the Company has worked cooperatively with the CPSC to further enhance the safety of its products, while signaling a decrease in the need to book additional reserves for potential future product recall expenses, in an attempt to regain the public's trust and repair its damaged brand and reputation.

### Materially False and Misleading Statements Issued During the Class Period

22.     The Class Period begins on May 10, 2022, when Peloton issued a shareholder letter announcing the Company's financial results for its third fiscal quarter of 2022, ended March 31, 2022 (the "3Q22 Shareholder Letter"). In a footnote detailing product recall expenses for the quarter, the 3Q22 Shareholder Letter stated, in relevant part:

> Represents adjustments and charges associated with the Tread and Tread+ product recall, as well as accrual adjustments. These include a reduction to Connected Fitness Products revenue for actual and estimated future returns of $17.5 million and $36.3 million, recorded costs in Connected Fitness Products cost of revenue associated with inventory write-downs and logistic costs of $2.0 million and $7.6 million, and operating expenses of $2.0 million and $5.0 million associated with recall-related hardware development costs, in each case for the three and nine months ended March 31, 2022, respectively.

23.     Also on May 10, 2022, Peloton filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the Company's third fiscal quarter ended March 31, 2022 (the "3Q22 10-Q"). That filing contained the same statements as referenced in ¶ 22, *supra*, regarding the Company's product recall expenses and estimated future product returns.

24.     With respect to Peloton's product recall reserves, the 3Q22 10-Q stated, in relevant part:

> On May 5, 2021, the Company announced separate, voluntary recalls of its Tread+ and Tread products in collaboration with the [CPSC] and halted sales of these products to work on product enhancements. As a result of these recalls, the

6

Company accrued for a reduction to Connected Fitness Products revenue for actual and estimated future returns of $17.5 million and $36.3 million for the three and nine months ended March 31, 2022, respectively, and a return reserve of $36.7 million is included within Accounts payable and accrued expenses in the accompanying condensed consolidated balance sheets related to the impacts of the recall. ***The estimated returns reserve is primarily based on historical and expected product returns.***

(Emphasis added.)

25.     Appended as exhibits to the 3Q22 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants McCarthy and Woodworth certified that the 3Q22 10-Q "fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act], as amended" and that "the information contained in the [3Q22 10-Q] fairly presents, in all material respects, the financial condition, and results of operations of the Company."

26.     On August 25, 2022, Peloton issued a shareholder letter announcing the Company's financial results for its fourth fiscal quarter of 2022, ended June 30, 2022 (the "4Q22 Shareholder Letter").  In a footnote detailing product recall expenses for the quarter, the 4Q22 Shareholder Letter stated, in relevant part:

Represents adjustments and charges associated with the Tread and Tread+ product recall, as well as accrual adjustments. These include a reduction to Connected Fitness Products revenue for actual and estimated future returns of $12.5 million and $48.9 million, recorded costs in Connected Fitness Products cost of revenue associated with inventory write-downs and logistic costs of $0.5 million and $8.1 million, and operating expenses of $0.4 million and $5.4 million associated with recall-related hardware development costs, in each case for the three months and fiscal year ended June 30, 2022, respectively.

27.     On September 7, 2022, Peloton filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the Company's fourth fiscal quarter and full year ended June 30, 2022  (the "2022 10-K").  The 2022 10-K stated that product recall expenses were $62.3 million for the full fiscal year ended June 30, 2022, as compared to $100

million for the full fiscal year ended June 30, 2021, thereby indicating a significant, sustainable reduction in these expenses.

28.     In a footnote further detailing these product recall expenses, the 2022 10-K stated, in relevant part:

> Represents adjustments and charges associated with the Tread and Tread+ product recall, as well as accrual adjustments. These include a reduction to Connected Fitness Products revenue for actual and estimated future returns of $48.9 million and $81.1 million, recorded costs in Connected Fitness Products cost of revenue associated with inventory write-downs and logistic costs of $8.1 million and $15.7 million, and operating expenses of $5.4 million and $3.2 million associated with recall-related hardware development costs, in each case for the fiscal years ended June 30, 2022 and 2021, respectively.

29.     With respect to Peloton's product recall reserves, the 2022 10-K stated, in relevant part:

> On May 5, 2021, the Company announced separate, voluntary recalls of its Tread+ and Tread products in collaboration with the [CPSC] and halted sales of these products to work on product enhancements. As a result of these recalls, the Company accrued for a reduction to Connected Fitness Products revenue for actual and estimated future returns of $48.9 million and $81.1 million for the fiscal years ended June 30, 2022 and 2021, and as of June 30, 2022 and 2021, a return reserve of $39.9 million and $40.8 million, respectively, is included within Accounts payable and accrued expenses in the accompanying Consolidated Balance Sheets related to the impacts of the recall. ***The estimated returns reserve is primarily based on historical and expected product returns.***

(Emphasis added.)

30.     In addition, the 2022 10-K stated that "predicting expected product returns based on historical returns [has] become[] less relevant, requiring reliance on highly subjective estimates based on our interpretation of how current conditions and factors will drive consumer behavior"; and that, "[s]ince the inception of the product recall, we have recorded return provisions as a reduction to Connected Fitness Products revenue of approximately $139.9 million."

31.     Appended as exhibits to the 2022 10-K were substantively the same SOX certifications as referenced in ¶ 25, *supra*, signed by Defendants McCarthy and Coddington.

32.     On November 3, 2022, Peloton issued a shareholder letter announcing the Company's financial results for its first fiscal quarter of 2023, ended September 30, 2022 (the "1Q23 Shareholder Letter").  In a footnote detailing product recall expenses for the quarter, the 1Q23 Shareholder Letter stated, in relevant part:

> Represents adjustments and charges associated with the Tread and Tread+ product recall, as well as accrual adjustments. These include a reduction to Connected Fitness Products revenue for actual and estimated future returns of $26.5 million and $11.4 million, recorded costs in Connected Fitness Products cost of revenue associated with inventory write-downs and logistic costs of $2.5 million and $0.5 million, and operating expenses of zero and $1.0 million associated with recall-related hardware development costs, in each case for the three months ended September 30, 2022 and 2021, respectively.

33.     Also on November 3, 2022, Peloton filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the Company's first fiscal quarter ended September 30, 2022 (the "1Q23 10-Q").  That filing contained the same statements as referenced in ¶ 32, *supra*, regarding the Company's product recall expenses and estimated future product returns.

34.     With respect to Peloton's product recall reserves, the 1Q23 10-Q stated, in relevant part:

> On May 5, 2021, the Company announced separate, voluntary recalls of its Tread+ and Tread products in collaboration with the [CPSC] and halted sales of these products to work on product enhancements. On October 18, 2022, the CPSC and the Company jointly announced that consumers now have more time to get a full refund if they wish to return their recalled Tread+. With the extension of the full refund period by one additional year, to November 6, 2023, the Company expects that more Members will opt for a full refund, and has accordingly increased the Company's return reserve. The Company accrued for a reduction to Connected Fitness Products revenue for actual and estimated future returns of $26.5 million and $11.4 million for the three months ended September 30, 2022 and 2021, respectively, and a return reserve of $57.9 million and $31.1 million, respectively,

was included within Accounts payable and accrued expenses in the accompanying Condensed Consolidated Balance Sheets related to the impacts of the Tread+ recall. ***The estimated returns reserve is primarily based on historical and expected product returns.***

(Emphasis added.)

35.    Appended as exhibits to the 1Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 25, *supra*, signed by Defendants McCarthy and Coddington.

36.    On February 1, 2023, Peloton issued a shareholder letter announcing the Company's financial results for its second fiscal quarter of 2023, ended December 31, 2022 (the "2Q23 Shareholder Letter").  In the 2Q23 Shareholder Letter, Peloton reported, among other results, that product recall expenses were $2.3 million for the three months ended December 31, 2022, compared to $14.7 million for the same period the year prior, indicating a significant, sustainable reduction in these expenses.

37.    In a footnote further detailing these product recall expenses, the 2Q23 Shareholder Letter stated, in relevant part:

> Represents adjustments and charges associated with the Tread and Tread+ product recall, as well as accrual adjustments. These include a reduction to Connected Fitness Products revenue for actual and estimated future returns of zero and $26.5 million, recorded costs in Connected Fitness Products cost of revenue associated with inventory write-downs and logistic costs of zero and $2.5 million, and operating expenses of $2.3 million and $2.3 million associated with recall-related hardware development costs, in each case for the three and six months ended December 31, 2022, respectively.

38.    Also on February 1, 2023, Peloton filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the Company's second fiscal quarter ended December 31, 2022 (the "2Q23 10-Q").  That filing contained the same statements as referenced in ¶¶ 36-37, *supra*, regarding the Company's product recall expenses and estimated future product returns.

39.    With respect to Peloton's product recall reserves, the 2Q23 10-Q stated, in relevant part:

> For the recall-to-date period, the Company recognized a reduction to Connected Fitness Products revenue for actual and estimated future returns of $166.9 million, and return reserves of $44.5 million and $26.7 million were included within Accounts payable and accrued expenses in the Condensed Consolidated Balance Sheets related to the impacts of the recall as of December 31, 2022 and 2021, respectively . . . . ***Recall charges are based upon estimates associated with our expected and historical consumer response rates.***

(Emphasis added.)

40.    The 2Q23 10-Q also stated, in relevant part, that "we continue to work cooperatively with the CPSC to further enhance the safety of our products."

41.    Appended as exhibits to the 2Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 25, *supra*, signed by Defendants McCarthy and Coddington.

42.    On May 4, 2023, Peloton issued a shareholder letter announcing the Company's financial results for its third fiscal quarter of 2023, ended March 31, 2023 (the "3Q23 Shareholder Letter").  In the 3Q23 Shareholder Letter, Peloton reported, among other results, that expenses for product recall related matters were $9.7 million and $40.9 million, respectively, for the three and nine months ended March 31, 2023, compared to $21.4 million and $49 million, respectively, for the same periods the year prior, indicating a significant, sustainable reduction in these expenses.

43.    In a footnote further detailing these product recall expenses, the 3Q23 Shareholder Letter stated, in relevant part:

> Represents adjustments and charges associated with product recall related matters, as well as accrual adjustments. These include an adjustment to Connected Fitness Products revenue for actual and estimated future returns of $(11.9) million and $14.6 million, recorded costs in Connected Fitness Products cost of revenue associated with recall related matters of $21.6 million and $24.1 million, and operating expenses of zero and $2.3 million associated with recall-related hardware development costs, in each case for the three and nine months ended March 31, 2023, respectively.

Notably, the Company stopped attributing product recall expenses specifically to adjustments and charges associated with the Tread and Tread+ product recall, as it had done in prior quarters, and instead attributed product recall expenses to adjustments and charges associated with more generalized "product recall related matters", while failing to apprise investors of what, if any, such charges were attributable to actual or estimated future returns for the Company's other Connected Fitness Products, particularly the Company's Peloton Bikes.

44.     Also on May 4, 2023, Peloton filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the Company's third fiscal quarter ended March 31, 2023 (the "3Q23 10-Q").  That filing contained the same statements as referenced in ¶¶ 42-43, *supra*, regarding the Company's product recall expenses and estimated future product returns.

45.     In addition, the 3Q23 10-Q—notably, just one week before the CPSC issued a product recall affecting millions of Peloton Bikes—represented that "[d]uring the three months ended March 31, 2023, based on lower actual returns than previously estimated, the Company has updated its return reserve assumptions and decreased the Company's return reserve."

46.     With respect to Peloton's product recall reserves, the 3Q23 10-Q stated, in relevant part:

> For the recall-to-date period, the Company recognized a reduction to Connected Fitness Products revenue for actual and estimated future returns of $154.4 million, and return reserves of $29.3 million and $36.7 million were included within Accounts payable and accrued expenses in the Condensed Consolidated Balance Sheets as of March 31, 2023 and 2022, respectively, related to the impacts of the recall . . . . ***Recall charges are based upon estimates associated with our expected and historical consumer response rates.***

(Emphasis added.)

12

47.     The 3Q23 10-Q also reiterated that "we continue to work cooperatively with the CPSC to further enhance the safety of our products."

48.     The statements referenced in ¶¶ 22-47 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the seat posts for certain of the Company's Peloton Bikes were prone to break or otherwise detach during use, rendering them unsafe for users; (ii) as a result, the Company was likely to recall millions of Peloton Bikes; (iii) accordingly, Peloton overstated its efforts to enhance the safety of its products, understated its estimated future returns, and downplayed the Company's need to book additional reserves for future product recall expenses; (iv) all the foregoing, once revealed, was likely to negatively impact the Company's business and financial results and reputation; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

49.     On May 11, 2023, during pre-market hours, the CPSC issued a product recall affecting roughly 2.2 million Peloton Bikes, stating that "[t]he bike's seat post assembly can break during use, posing fall and injury hazards to the user."   The product recall announcement also specified, in relevant part:

**Description:**

This recall involves Peloton Bikes with model number PL01. The Peloton Bike measures 4 ft. long x 2 ft. wide, and has an adjustable seat, handlebar, and screen, which tilts up and down to accommodate different heights. The Peloton name and the model number are displayed on the inside front fork, near the flywheel.

**Remedy:**

Consumers should immediately stop using the recalled exercise bikes and contact Peloton for a free repair. Peloton is offering consumers a free seat post that can be self-installed.

**Incidents/Injuries:**

Peloton has received 35 reports of the seat post breaking and detaching from the bike during use, including 13 reports of injuries including a fractured wrist, lacerations and bruises due to falling from the bike.

**Sold At:**

Peloton and Dick's Sporting Goods stores nationwide and online at Onepeloton.com, Amazon.com and Dicksportinggoods.com from January 2018 through May 2023 for about $1,400.

**Distributor(s):**

Peloton Interactive Inc., of New York

50.     On this news, Peloton's Class A common stock price fell $0.67 per share, or 8.9%, to close at $6.86 per share on May 11, 2023.

51.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Peloton securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Peloton securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Peloton or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

54.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

55.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Peloton;

- whether the Individual Defendants caused Peloton to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Peloton securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

58.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Peloton securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Peloton securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

59.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

60.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

61.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

62.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

63.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Peloton securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Peloton securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

64.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Peloton securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Peloton's finances and business prospects.

65.      By virtue of their positions at Peloton, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

66.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Peloton, the Individual Defendants had knowledge of the details of Peloton's internal affairs.

67.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

Peloton.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Peloton's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Peloton securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Peloton's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Peloton securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

68.     During the Class Period, Peloton securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Peloton securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Peloton securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Peloton securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

69.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

71.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.     During the Class Period, the Individual Defendants participated in the operation and management of Peloton, and conducted and participated, directly and indirectly, in the conduct of Peloton's business affairs.  Because of their senior positions, they knew the adverse non-public information about Peloton's misstatement of income and expenses and false financial statements.

73.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Peloton's financial condition and results of operations, and to correct promptly any public statements issued by Peloton which had become materially false or misleading.

74.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Peloton disseminated in the marketplace during the Class Period concerning

Peloton's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Peloton to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Peloton within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Peloton securities.

75.     Each of the Individual Defendants, therefore, acted as a controlling person of Peloton.  By reason of their senior management positions and/or being directors of Peloton, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Peloton to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Peloton and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

76.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Peloton.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated:  June 9, 2023

Respectfully submitted,

POMERANTZ LLP

<u>/s/ Jeremy A. Lieberman</u>
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Attorneys for Plaintiff*

DocuSign Envelope ID: 55F5C1DD-3638-41BC-A160-1AA2D8335AD5

# CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, ___Sam Solomon_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Peloton Interactive, Inc. ("Peloton") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Peloton securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Peloton securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Peloton securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.


**Executed** _6/2/2023_____
                    **(Date)**

DocuSigned by:

*Sam Solomon*

_____
**(Signature)**
8DE699C076D54AD...


Sam Solomon
_____
**(Type or Print Name)**

**Peloton Interactive, Inc. (PTON)**                                                    **Sam Solomon**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 4/13/2023 | 15,459 | $10.2000 |
| Purchase | 4/13/2023 | 4,076 | $10.1900 |
| Purchase | 4/13/2023 | 1,090 | $10.1850 |
| Sale | 4/21/2023 | (7,850) | $9.3301 |
| Sale | 5/3/2023 | (775) | $8.8360 |