```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
SAM SOLOMON, Individually and On Behalf of All    :
Others Similarly Situated,                         :
                                                   :
                              Plaintiff,           :     MEMORANDUM AND
                                                   :     ORDER
        -against-                                  :
                                                   :     No. 23-CV-4279-MKB-JRC
PELOTON INTERACTIVE, INC., BARRY                   :
MCCARTHY, ELIZABETH F.                             :
CODDINGTON, and JILL WOODWORTH,                    :
                                                   :
                              Defendants.          :
------------------------------------------------------------------- x
```

JAMES R. CHO, United States Magistrate Judge:

## Introduction

On June 9, 2023, plaintiff Sam Solomon ("Plaintiff") commenced this putative securities class action against defendants Peloton Interactive, Inc. ("Peloton") and certain of its present and former officers, Barry McCarthy, Elizabeth F. Coddington, and Jill Woodworth (collectively, "Defendants"), alleging violations of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* Complaint, Dkt. 1 ("Compl."). Currently pending before this Court is the joint motion filed by Jia Tian ("Tian") and David Feigelman ("Feigelman") (collectively, "Movants") seeking their appointment as co-lead plaintiffs and approval of Pomerantz LLP ("Pomerantz") and Levi & Korsinsky, LLP ("Levi & Korsinsky") as co-lead counsel. *See* Joint Motion of Tian and Feigelman ("Joint Mot."), Dkt. 16. For the reasons set forth below, the Court grants Movants' Joint Motion.

## Background

### I. Factual Background

The following facts are drawn from Plaintiff's Complaint. Supporting declarations are accepted as true for purposes of this motion.

Peloton—best known for manufacturing, marketing, and selling its Peloton bike—operates an interactive fitness platform across North America and internationally. Compl. ¶ 20. In 2021, the U.S. Consumer Product Safety Commission ("CPSC") issued an urgent warning to consumers to stop using Peloton's treadmill products because of risks of injury and death posed to children and pets in the vicinity. *Id.* ¶ 21. Peloton was ultimately forced to recall the products. *Id.* In an attempt to regain public trust, Peloton repeatedly assured investors and consumers that it worked cooperatively with CPSC to further enhance the safety of its products and indicated a decreasing need to set aside reserves for expenses relating to product recalls. *Id.*

However, on May 11, 2023, the CPSC issued a product recall affecting roughly 2.2 million Peloton Bikes, stating that "[t]he bike's seat post assembly can break during use, posing fall and injury hazards to the user." *Id.* ¶ 49. Following this news, Peloton's Class A common stock price fell $0.67 per share, or 8.9 percent. *Id.* ¶ 50.

Plaintiff alleges that Defendants made materially false or misleading statements and failed to disclose material adverse facts to the public through several documents filed with the Securities and Exchange Commission ("SEC") between May 10, 2022 and May 10, 2023 (the "Class Period"). *See id.* ¶¶ 1, 22–47. Specifically, Plaintiff contends that, *inter alia*, Peloton's annual and quarterly reports and shareholder letters overstated the company's efforts to enhance the safety of its products, understated its estimated future returns, and downplayed its need to book additional reserves for potential future product recall expenses. *Id.* ¶ 48.

## II.     Relevant Procedural History

On June 9, 2023, Pomerantz issued a notice alerting purported class members to the class action lawsuit against Peloton. *See* PSLRA Notice, Dkt. 11-3. On August 8, 2023, Tian moved for appointment as the lead plaintiff and appointment of Levi & Korsinsky as lead counsel. *See*

2

Tian Motion to Appoint Lead Plaintiff and Counsel, Dkt. 9, and accompanying Memorandum of Law ("Tian Mot."), Dkt. 10.  On the same day, Feigelman moved for appointment as lead plaintiff and appointment of Pomerantz as lead counsel.  *See* Feigelman Motion to Appoint Lead Plaintiff and Counsel, Dkt. 15, and accompanying Memorandum of Law ("Feigelman Mot."), Dkt. 15-2.  Both motions were timely under the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) (requiring that lead plaintiff motions be filed within 60 days of publication of notice).

On August 22, 2023, after Tian and Feigelman filed their initial motion for appointment of lead plaintiff and counsel, they jointly moved for appointment as co-lead plaintiffs and appointment of their attorneys Levi & Korsinsky and Pomerantz as co-lead counsel.  *See* Joint Mot., Dkt. 16.  For the reasons set forth below, the Court grants the Movants' Joint Motion, appoints Tian and Feigelman as co-lead plaintiffs, and appoints Levi & Korsinsky and Pomerantz as co-lead counsel.

## Discussion

### I.      Notice Requirement

The PSLRA requires the plaintiff who files the first action to publish a notice to the putative class within 20 days of filing the complaint "in a widely circulated national business-oriented publication or wire service" advising members of "the pendency of the action, the claims asserted therein, and the purported class period."  15 U.S.C. § 78u-4(a)(3); *see also Darish v. N. Dynasty Mins. Ltd.*, No. 20-CV-5917, 2021 WL 1026567, at *3 (E.D.N.Y. Mar. 17, 2021).  Even where, as here, no party has objected to the adequacy of notice, "courts have an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA."  *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886-LDH-SJB, 2020 WL 8225336, at *3 (E.D.N.Y. Dec. 22, 2020) (quotations omitted).

3

According to the parties' submissions, on June 9, 2023, the same day Plaintiff filed his complaint, notice of the action was published in *Accesswire*. *See* PSLRA Notices, Dkts. 11-3, 15-5. Courts in this Circuit have found *Accesswire* to be a suitable publication for PSLRA notice purposes. *See, e.g.*, *Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, No. 22 Civ. 9174, 2023 WL 1879525, at *3 (S.D.N.Y. Feb. 10, 2023) (finding notice via *Accesswire* sufficient because it is a "national, business-oriented wire service"); *Baldwin v. Net 1 UEPS Techs., Inc.*, No. 19-CV-11174, 2020 WL 1444937, at *2 (S.D.N.Y. Mar. 25, 2020) (same). Further, the notice included the Class Period alleged in the Complaint, the purported class of purchasers, and the deadline to file a lead plaintiff motion. *See* PSLRA Notices, Dkts. 11-3, 15-5. The Court finds the notice requirement has been satisfied.

## II.     Appointment of Co-Lead Plaintiffs

Under the PSLRA, courts should "appoint as 'lead plaintiff' the member of the class that it determines to be the 'most adequate plaintiff,' *i.e.*, *the member 'most capable of adequately representing the interests of class members*.'" *Chitturi*, 2020 WL 8225336, at *4 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)) (emphasis in original). "The PSLRA expressly permits 'a group of persons' to be appointed lead plaintiff." *Garnett v. RLX Tech. Inc.*, No. 21 Civ. 5125, 2021 WL 3913541, at *5 (S.D.N.Y. Aug. 31, 2021) (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)).

Courts generally follow a two-step process to determine the "most adequate plaintiff." *See Darish*, 2021 WL 1026567, at *5. In the first step, the PSLRA establishes a presumption that the "most adequate plaintiff" is "the person or group of persons that: (1) has either filed the complaint or made a timely motion to be appointed as lead plaintiff(s); (2) in the determination of the court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Chitturi*, 2020

4

WL 8225336, at *4 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)) (internal quotations omitted). The Court considers two objective factors to determine appointment of a lead plaintiff: "the plaintiffs' respective financial stakes in the relief sought by the class, and their ability to satisfy the requirements of Rule 23." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 81 (2d Cir. 2004). The PSLRA requires courts to "start with the rebuttable presumption that the most adequate plaintiff is the person or entity with the largest financial interest in the relief sought." *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 234 (E.D.N.Y. 2011) (citations omitted).

After the Court identifies a presumptively adequate plaintiff, the Court inquires at the second step whether that presumption has been "rebutted" by a member of the purported plaintiff class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). This presumption "may be rebutted only upon proof that the presumptively adequate plaintiff either will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Chitturi*, 2020 WL 8225336, at *4 (internal quotations and citations omitted); *see also Bensley*, 277 F.R.D. at 234. Here, Movants are the only members of the purported plaintiff class seeking appointment, and, accordingly, no other members challenge their presumptive adequacy.

### A. Largest Financial Interest

"[T]he PSLRA does not specify how to determine which plaintiff has 'the largest financial interest' in the relief sought." *Bensley*, 277 F.R.D. at 234 (citation omitted). To determine which party has the largest financial interest, courts consider the following four factors:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the

5

difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Chitturi*, 2020 WL 8225336, at *4. Most courts have held that the fourth factor, "the approximate losses suffered," is the most important consideration. *See Bensley*, 277 F.R.D. at 234 (collecting cases).

Here, Tian purchased and retained approximately 30,735 shares during the Class Period. *See* Tian Loss Chart, Dkt. 11-2. Tian's total losses amount to approximately $85,966.04 on a last-in, first-out ("LIFO") basis. *See id*. Feigelman purchased and retained 45,000 shares, suffering losses of approximately $99,301 on a LIFO basis (or $199,956 on a first-in, first-out basis). *See* Feigelman Loss Chart, Dkt. 15-4. The Movants' collective losses total approximately $185,267.04 ($85,966.04 + $99,301) on a LIFO basis. No other purported class member has come forward suggesting they suffered a greater loss. The Court therefore concludes Movants jointly have the largest financial interest in the relief sought.

**B.     Rule 23 Requirements**

Under the PSLRA, the movant with the largest financial interest must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 362 (S.D.N.Y. 2019). Rule 23(a) provides that "one or more members of a class" may sue on behalf of the class if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23. Only two of the prerequisites to class certification—typicality and adequacy—"are relevant to the selection of lead plaintiff." *Olsen v. New York Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 108 (E.D.N.Y. 2005); *see also City of Ann Arbor Employees' Ret. Sys. v.*

6

*Citigroup Mortg. Loan Tr. Inc.*, No. CV-08-1418, 2009 WL 10709107, at *3 (E.D.N.Y. Mar. 9, 2009) ("[Only typicality and adequacy] directly address the personal characteristics of the class representative."), *report and recommendation adopted*, 2009 WL 10750336 (E.D.N.Y. Mar. 16, 2009). "At this stage of the litigation, the [movant] must only make a preliminary showing that the adequacy and typicality requirements have been met." *Freudenberg v. E*Trade Fin. Corp.*, Nos. 07 Civ. 8538, 07 Civ. 8808, 07 Civ. 9651, 07 Civ. 10400, 07 Civ. 10540, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998), *opinion adhered to on reconsideration sub nom. In re Olsten Corp.*, 181 F.R.D. 218, 219 (E.D.N.Y. 1998) ("A wide ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification.") (citation omitted).

The typicality requirement is satisfied "where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *Lavin v. Virgin Galactic Holdings, Inc.*, No. 21-CV-3070, 2021 WL 5409798, at *7 (E.D.N.Y. Sept. 17, 2021) (internal quotations and citations omitted). The movants' claims "need not be identical to the claims of the class to satisfy the typicality requirement." *City of Ann Arbor*, 2009 WL 10709107, at *3 (quotations omitted). Rather, courts appoint lead plaintiffs when their "claims are based on the same alleged false or misleading statements and omissions attributed to Defendants during the same period as the other potential class members' claims." *Lavin*, 2021 WL 5409798, at *7.

Like the rest of the purported class, both Tian and Feigelman claim to have purchased or otherwise acquired Peloton securities during the Class Period and to have suffered losses as a result of Defendants' material misstatements and omissions. *See* Tian Mot. at 7; Feigelman Mot. at 8; *see also* Compl. ¶ 52 (defining plaintiff class). Thus, the Movants' claims are typical of the

7

proposed class.

The adequacy requirement is met where a movant "will fairly and adequately protect the interests of the class." *Chitturi*, 2020 WL 8225336, at *5 (quotations omitted). For a lead plaintiff to satisfy this requirement:

> (1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation. Additionally, the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy.

*Kehoe v. 3D Sys. Corp.*, No. 21-CV-1920, 2021 WL 5408923, at *5 (E.D.N.Y. July 13, 2021). No evidence is raised to suggest any conflict between Movants and the remainder of the class. The Movants have selected qualified counsel to represent them, and both Movants have submitted sworn declarations attesting to their experience as investors and their thorough understanding of the present litigation. *See generally* Tian Declaration, Dkt. 11-4; Feigelman Declaration, Dkt. 15-7.

Although lead plaintiff groups are permitted under the PSLRA, *see* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I), "the PSLRA does not define what a 'group' can or should be, nor how its members must be related to one another," *Carpenter v. Oscar Health, Inc.*, 631 F. Supp. 3d 157, 162 (S.D.N.Y. 2022). Courts deciding whether a lead plaintiff group is appropriate may consider "(1) the size of the group; (2) the relationship between the parties; and (3) any evidence that the group was formed in bad faith." *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133, 2012 WL 946875, at *7 (S.D.N.Y. Mar. 19, 2012). A plaintiff group should not be appointed if it offers no evidentiary basis for aggregation or was "assembled as a makeshift by attorneys" in order to claim the greatest financial interest. *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392–93 (S.D.N.Y. 2008).

The Court is persuaded that Tian and Feigelman together form a permissible lead plaintiff group. As only two individuals, "the group is relatively small and therefore presumptively cohesive." *Garnett*, 2021 WL 3913541, at *5 (appointing group of three individuals). Although the Movants do not submit evidence of a preexisting relationship, they have submitted a joint stipulation stating they reviewed each other's submissions and determined "that it is in the best interests of the Class for them to serve as Co-Lead Plaintiffs." Joint Mot. at 2; *see also Carpenter v. Oscar Health, Inc.*, 631 F. Supp. 3d 157, 163 (S.D.N.Y. 2022) (crediting movants' declaration "representing that they are able to work cohesively to ensure that the class achieves the largest possible recovery"). Lastly, Movants' request for appointment as a group does not point to bad faith. With no other purported class members seeking appointment, there is "no suggestion that the group was formed to box out an outside candidate." *Garnett*, 2021 WL 3913541, at *5. Instead, Movants' cooperation here simply streamlines the appointment process.

Accordingly, the Court finds the Movants are adequate representatives and that, along with their chosen counsel, they will pursue this case vigorously, making Tian and Feigelman the presumptively adequate lead plaintiffs. With no other movants contesting their adequacy, this Court appoints Tian and Feigelman as co-lead plaintiffs.

### III.    Appointment of Co-Lead Counsel

The PSLRA permits the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movants have selected Pomerantz and Levi & Korsinsky, both experienced law firms in securities class action litigation. No other movant or party challenges Movants' selection. The Court finds no reason why these firms would not adequately represent the class and appoints them as co-lead counsel.

## Conclusion

For the reasons set forth above, the Court grants the Joint Motion (Dkt. 16), appoints Tian and Feigelman as co-lead plaintiffs, and appoints Pomerantz and Levi & Korsinsky as co-lead counsel. The individual motions for appointment of lead plaintiff and approval of lead counsel by Tian and Feigelman (Dkts. 9, 15) are rendered moot.

By November 6, 2023, the co-lead plaintiffs shall file an amended complaint. By January 5, 2024, Defendants shall answer, move, or otherwise respond to the amended complaint.

**SO ORDERED**

Dated: Brooklyn, New York
September 7, 2023

s/ James R. Cho
James R. Cho
United States Magistrate Judge
