**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JIA TIAN and DAVID
FEIGELMAN, individually and on
behalf of all others similarly situated,

                Plaintiffs,

     v.

PELOTON INTERACTIVE, INC., JOHN
FOLEY, BARRY MCCARTHY, JILL
WOODWORTH, ELIZABETH F.
CODDINGTON, THOMAS CORTESE, HISAO
KUSHI, and TAMMY ALBARRÁN,

                Defendants.

Case No. 1:23-cv-04279-MKB-JRC


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**


COVINGTON & BURLING LLP
Mark P. Gimbel
Jordan S. Joachim
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 841-1000
mgimbel@cov.com
jjoachim@cov.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ..................................................................................................... 4

    A.    Peloton and the Individual Defendants. ........................................... 4

    B.    The Peloton Bike and Peloton's Robust Product-Related Risk Disclosures. ......... 4

    C.    Approximately 11 People (Out of Millions of Bike Users) Allegedly Raise Issues About the Bike Seat or Seat Post on Social Media Sites or to Unspecified Persons at Peloton.............................................................. 5

    D.    Peloton Investigates an Unrelated Cosmetic Oxidation Issue With the Bike and Concludes It Does Not Have Any Impact on Bike Durability or Reliability................................................................................. 7

    E.    Peloton Discloses a Potential Safety Issue With the Bike Seat Post. ..................... 7

    F.    Plaintiffs Seek To Turn a Voluntary Recall of the Bike Seat Post Into a Securities Fraud Claim................................................................... 9

ARGUMENT ........................................................................................................ 9

I.    PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISREPRESENTATION OR OMISSION................................................................................... 10

    A.    Plaintiffs Do Not Allege Facts Establishing That the Risk Disclosures Were False or Misleading. ..................................................... 10

    B.    Plaintiffs Do Not Allege Facts Establishing That the Loss Accrual Was False or Misleading.......................................................... 13

    C.    Plaintiffs Do Not Allege Facts Establishing That the Description of the Bike Seat Post Recall as "Voluntary" Was False or Misleading. ......................... 15

    D.    Plaintiffs Do Not Allege Facts Establishing That the Challenged Statements on Member Safety and Product Quality Were False or Misleading................................................................................ 16

    E.    Plaintiffs Do Not Allege Facts Establishing That the Statement on Working "Cooperatively" With the CPSC Was False or Misleading.................. 17

    F.    Plaintiffs Do Not Allege Facts Establishing That the Statements Concerning "Project Tinman" Were False or Misleading. ................................. 18

    G.    Plaintiffs Do Not Allege Facts Establishing That the Statements Concerning the Company's Subscriptions Were False or Misleading. ............... 19

i

H.     Plaintiffs Do Not Allege Facts Establishing a Violation of Regulation S-K. ....... 20

II.    PLAINTIFFS FAIL TO PLEAD SCIENTER. .................................................................. 21

A.     Plaintiffs Fail To Allege Conscious Misbehavior or Recklessness. .................... 22

1.     Plaintiffs Rely on Impermissible Group Pleading. .................................. 22

2.     Plaintiffs Fail To Allege Scienter Based on Customer Complaints. ......... 23

3.     Plaintiffs' Other Theories of Scienter Also Fail. ..................................... 25

B.     Plaintiffs Fail To Allege Motive or Opportunity To Commit Fraud. .................. 29

C.     Plaintiffs Do Not Allege a Strong Inference of Scienter as to Peloton. ............... 30

III.   PLAINTIFFS' SECTION 20(a) CLAIM SHOULD BE DISMISSED. .......................... 30

CONCLUSION .................................................................................................................................. 30

# TABLE OF AUTHORITIES

## Cases

*In re 3M Co. Sec. Litig.*,
   2021 WL 4482987 (D. Minn. Sept. 30, 2021) ..................................................................14

*Acito v. IMCERA Grp.*,
   47 F.3d 47 (2d Cir. 1995) ...............................................................................................12

*In re Aegon N.V. Sec. Litig.*,
   2004 WL 1415973 (S.D.N.Y. June 23, 2004) ..................................................................14

*In re Allergan PLC Sec. Litig.*,
   2019 WL 4686445 (S.D.N.Y. Sept. 20, 2019)...........................................................2, 11, 12

*Altayyar v. Etsy, Inc.*,
   242 F. Supp. 3d 161 (E.D.N.Y. 2017) .............................................................................22

*Anschutz Corp. v. Merrill Lynch & Co.*,
   690 F.3d 98 (2d Cir. 2012)...............................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................................9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..........................................................................................10, 30

*Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011)..........................................................................26, 30

*In re Bristol-Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004).............................................................................29

*C.D.T.S. v. UBS AG*,
   2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) .................................................................23

*Campo v. Sears Holdings Corp.*,
   371 F. App'x 212 (2d Cir. 2010) .....................................................................................26

*Chapman v. Mueller Water Prods., Inc.*,
   466 F. Supp. 3d 382 (S.D.N.Y. 2020).........................................................................13, 29

*In re CIT Grp. Sec. Litig.*,
   349 F. Supp. 2d 685 (S.D.N.Y. 2004).........................................................................13, 14

*City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen.
   Holdings Corp.*,
   2021 WL 212337 (S.D.N.Y. Jan. 21, 2021) ...................................................................25

*City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*,
    679 F.3d 64 (2d Cir. 2012)................................................................................17

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)..............................................................................17

*City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*,
    412 F. Supp. 3d 206 (E.D.N.Y. 2019) .............................................................17

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
    433 F. Supp. 3d 515 (S.D.N.Y. 2020)..............................................................12

*Coronel v. Quanta Capital Holdings Ltd.*,
    2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) .....................................................14

*Desyatnikov v. Credit Suisse Grp.*,
    2012 WL 1019990 (E.D.N.Y. Mar. 26, 2012) .............................................23, 27

*Detroit Gen. Ret. Sys. v. Medtronic, Inc.*,
    621 F.3d 800 (8th Cir. 2010) ............................................................................25

*In re DraftKings Inc. Sec. Litig.*,
    650 F. Supp. 3d 120 (S.D.N.Y. 2023)..........................................................20, 21

*ECA, Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)..........................................................................17, 22

*In re eSpeed, Inc. Sec. Litig.*,
    457 F. Supp. 2d 266 (S.D.N.Y. 2006)..............................................................29

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011)..............................................................................15

*In re FBR Inc. Sec. Litig.*,
    544 F. Supp. 2d 346 (S.D.N.Y. 2008)..............................................................11

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
    2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ..................................................20

*In re Ford Motor Co. Sec. Litig.*,
    184 F. Supp. 2d 626 (E.D. Mich. 2001)............................................................12

*Gagnon v. Alkermes PLC*,
    368 F. Supp. 3d 750 (S.D.N.Y. 2019)..............................................................29

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019)..............................................................................10

*Gordon v. Tencent Music Entm't Grp.*,
  2021 WL 9183821 (E.D.N.Y. Mar. 31, 2021) ........................................................21

*In re Hain Celestial Grp. Sec. Litig.*,
  2023 WL 6360345 (E.D.N.Y. Sept. 29, 2023) .......................................................26

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020)..........................................................................3, 22, 24

*Johnson v. NYFIX, Inc.*,
  399 F. Supp. 2d 105 (D. Conn. 2005)...................................................................30

*Kasilingam v. Tilray, Inc.*,
  2021 WL 4429788 (S.D.N.Y. Sept. 27, 2021) .......................................................30

*KBC Asset Mgmt. NV v. MetLife, Inc.*,
  2022 WL 480213 (2d Cir. Feb. 17, 2022)...............................................................28

*In re Keyspan Corp. Sec. Litig.*,
  383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...................................................................23

*Kusnier v. Virgin Galactic Holdings, Inc.*,
  639 F. Supp. 3d 350 (E.D.N.Y. 2022) ...................................................................21

*Lematta v. Casper Sleep, Inc.*,
  2022 WL 4637795 (E.D.N.Y. Sept. 30, 2022) .......................................................14

*Levy v. Maggiore*,
  48 F. Supp. 3d 428 (E.D.N.Y. 2014) ................................................................4, 30

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*,
  724 F. Supp. 2d 447 (S.D.N.Y. 2010).....................................................................26

*Long Miao v. Fanhua, Inc.*,
  442 F. Supp. 3d 774 (S.D.N.Y. 2020).....................................................................27

*Lopez v. CTPartners Exec. Search Inc.*,
  173 F. Supp. 3d 12 (S.D.N.Y. 2016).......................................................................14

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014)............................................................ *passim*

*Macquarie Infrastructure v. Moab Partners, L.P.*,
  No. 22-1165 (U.S.)..................................................................................................21

*Marcu v. Cheetah Mobile Inc.*,
  2020 WL 4016645 (S.D.N.Y. July 16, 2020) .........................................................11

*Nurlybayev v. ZTO Express (Cayman) Inc.*,
2021 WL 1226865 (S.D.N.Y. Mar. 31, 2021) ................................................................11

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ......................................................................................................15

*Ong v. Chipotle Mexican Grill, Inc.*,
294 F. Supp. 3d 199 (S.D.N.Y. 2018) ......................................................................12, 21

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
11 F.4th 90 (2d Cir. 2021) ............................................................................................19

*In re Pretium Resources Inc. Sec. Litig.*,
256 F. Supp. 3d 459 (S.D.N.Y. 2017) ..........................................................................28

*Robeco Capital Growth Funds SICAV v. Peloton Interactive, Inc.*,
665 F. Supp. 3d 522 (S.D.N.Y. 2023) ......................................................................12, 16

*In re Rockwell Med., Inc. Sec. Litig.*,
2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ..........................................................25, 29

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) .....................................................................................17, 30

*Rotunno v. Wood*,
2022 WL 14997930 (2d Cir. Oct. 27, 2022) ................................................................28

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
248 F. Supp. 3d 428 (S.D.N.Y. 2017) .......................................................................22, 26

*Slayton v. Am. Exp. Co.*,
604 F.3d 758 (2d Cir. 2010) ........................................................................................22

*Stadnick v. Vivint Solar, Inc.*,
861 F.3d 31 (2d Cir. 2017) ...........................................................................................21

*Stern v. Rocket Mortg., LLC*,
2023 WL 2742086 (E.D.N.Y. Mar. 31, 2023) ..............................................................10

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
531 F.3d 190 (2d Cir. 2008) ........................................................................................24

*In re Telefonaktiebolaget LM Ericsson Sec. Litig.*,
2023 WL 3628244 (E.D.N.Y. May 24, 2023) ..........................................................13, 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ......................................................................................................10

*Thomas v. Shiloh Indus., Inc.*,
   2017 WL 1102664 (S.D.N.Y. Mar. 23, 2017) ........................................................29

*Turner v. MagicJack VocalTec, Ltd.*,
   2014 WL 406917 (S.D.N.Y. Feb. 3, 2014)..........................................................30

*Ulbricht v. Ternium S.A.*,
   2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020) ....................................................11

*Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*,
   2016 WL 1261135 (S.D.N.Y. 2016)....................................................................13

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
   504 F. Supp. 3d 224 (S.D.N.Y. 2020)..................................................................19

*Woolgar v. Kingstone Cos.*,
   477 F. Supp. 3d 193 (S.D.N.Y. 2020)..................................................................15

*In re Yukos Oil Co. Sec. Litig.*,
   2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ......................................................23

**Statutes**

15 U.S.C. § 78u–4...............................................................................................2, 10, 21

15 U.S.C. § 78u–5...........................................................................................................20

15 U.S.C. § 2064.............................................................................................................15

**Other Authorities**

16 C.F.R. § 1102.6...........................................................................................................16

16 C.F.R. § 1115.20.........................................................................................................16

16 C.F.R. § 1115.21.........................................................................................................16

17 C.F.R. § 229.105.........................................................................................................20

17 C.F.R. § 229.303.........................................................................................................20

78 Fed. Reg. 69,793 (Nov. 21, 2013)..............................................................................16

Fed. R. Civ. P. 9(b) ...............................................................................................2, 10, 23

## GLOSSARY

The following terms are used in this memorandum:

| | |
|---|---|
| Complaint or Compl.: | Amended Class Action Complaint, filed November 6, 2023, ECF No. 23 |
| CEO: | Peloton's Chief Executive Officer |
| CFO: | Peloton's Chief Financial Officer |
| Class Period: | May 6, 2021 through and including August 22, 2023 |
| Company: | Peloton Interactive, Inc. |
| Connected Fitness Products: | Interactive fitness equipment including the Peloton Bike, Bike+, Tread, Tread+, Guide, and Row |
| CPSC: | U.S. Consumer Product Safety Commission |
| CPSA: | Consumer Product Safety Act, 15 U.S.C. § 2051, et seq. |
| CW(s): | Confidential Witness(es), as identifed in the Complaint |
| Exchange Act: | Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq. |
| Exhibits: | Exhibits attached to the Declaration of Mark P. Gimbel, dated February 2, 2024, which are public filings and statements and are incorporated into the Complaint and/or subject to judicial notice |
| Q1, Q2, Q3, or Q4: | Quarterly periods, starting with the first quarter of a fiscal year through the fourth quarter of the fiscal year.  Peloton's fiscal year begins on July 1 of the prior calendar year; i.e., fiscal year 2021 began July 1, 2020 and fiscal year 2022 began July 1, 2021. |
| Individual Defendants: | John Foley, Barry McCarthy, Jill Woodworth, Elizabeth Coddington, Thomas Cortese, Hisao Kushi, and Tammy Albarrán |
| Defendants: | The Individual Defendants and the Company |
| Peloton: | Peloton Interactive, Inc. |
| Plaintiffs: | Lead Plaintiffs Jia Tian and David Feigelman |

| PSLRA: | Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77k, 77l, 77z–1, 77z–2, 78a, 78j–1, 78t, 78u, 78u–4, 78u–5 |
|---|---|
| Member(s): | Active users and subscribers of Peloton's fitness platform |
| SEC: | U.S. Securities and Exchange Commission |

## PRELIMINARY STATEMENT

Plaintiffs attempt to manufacture a securities fraud case from the voluntary recall of the Peloton Bike seat post, but their nearly 100-page Complaint fails to allege a single actionable misrepresentation or omission—much less facts establishing that any of the Defendants acted with a fraudulent intent.  The Complaint should be dismissed.

Peloton is a technology-enabled fitness company that offers connected fitness equipment and classes through streaming and on-demand media.  Because of the inherent risks of consumer home fitness products, the Company regularly warns investors that its products may be affected by real or perceived design and manufacturing defects; that product recalls may occur; and that the Company could incur material costs as a result.  On May 4, 2023, after selling more than 2.4 million Bikes over the better part of a decade, Peloton announced that such a risk had materialized.  Specifically, Peloton disclosed that, following 35 reports of the seat post breaking and detaching during use (*i.e.*, approximately 0.0015% of Bikes sold), it had identified a potential product safety issue with the seat post; it was cooperating with the CPSC to finalize a voluntary corrective action plan to address the issue; and it had accrued $8.4 million in associated expenses—a sum it warned could materially increase in the future by an amount it was unable to estimate.

One week later, on May 11, 2023, Peloton and the CPSC announced a voluntary recall of the seat post and the CPSC-approved remedy:  consumers would be offered a free replacement seat post that could be self-installed.  In the months that followed, Peloton accrued $40 million in additional expenses when an unexpectedly large number of consumers elected to participate in the recall by requesting a replacement seat post.  Shortly after the recall announcement, Plaintiffs filed this action, alleging that Peloton misled investors by "actively concealing" the potential product safety issue during the putative Class Period running from May 6, 2021 through and including August 22, 2023 and failing to accurately predict associated expenses when it first announced the

issue. The allegations fail to state a claim.

Nowhere in the 276 paragraphs of the Complaint do Plaintiffs plead any facts establishing either that Defendants made a false statement or that they acted with an intent to deceive—essential elements of any securities fraud claim that must be pleaded with particularity under the exacting standards of Federal Rule of Civil Procedure 9(b) and the PSLRA. Rule 9(b) requires Plaintiffs to state with particularity the circumstances constituting an alleged fraud. The PSLRA, which was enacted as a check against abusive securities litigation, imposes even more stringent standards, requiring Plaintiffs to identify each statement alleged to be false or misleading, explain how and why the specific statement was misleading at the time it was made, and "state with particularity facts giving rise to a strong inference" that Defendants acted with an intent to deceive or defraud. *See* 15 U.S.C. § 78u–4(b)(1), 78u–4(b)(2)(A). The Complaint satisfies none of these burdens.

*First*, the Complaint does not allege any actionable misrepresentation or omission; instead, it relies on statements that were accurate at the time they were made and are otherwise inactionable. For example, Plaintiffs challenge Peloton's Class Period risk disclosures, but the disclosures warned against precisely the kinds of product recall risks that allegedly transpired. The fact that these risks "eventually happened" does not make the risk disclosures actionable—it "means that they were true." *In re Allergan PLC Sec. Litig.*, 2019 WL 4686445, at *21 (S.D.N.Y. Sept. 20, 2019). Plaintiffs also fault Peloton for failing to predict the exact amount of its future losses related to the Bike seat post, but the securities laws do not demand clairvoyance, and the Complaint nowhere pleads any facts establishing that any accrual of estimated expenses was inaccurate at the time the estimate was made. The other challenged statements are similarly insufficient because they consist of statements that are inactionable as a matter of law, including forward-looking

statements accompanied by meaningful cautionary language and immaterial statements of corporate culture and optimism.

**Second**, Plaintiffs fail to raise any inference of scienter, let alone the requisite "strong inference" of fraudulent intent required by the PSLRA. Virtually all of the Complaint's scienter allegations consist of generalized allegations about what Defendants purportedly must have known as a collective group, which is prohibited by the PSLRA's mandate that scienter be alleged with particularity as to each Defendant and each challenged statement individually. Moreover, Plaintiffs' unsupported claim that Peloton "actively concealed" the seat post issue in public statements dating back to May 2021 is meritless, as not a single fact pleaded in the Complaint establishes that Peloton was aware of the need for a recall, or of a significant safety issue requiring disclosure, before its initial public announcement of the matter in May 2023.

In an effort to manufacture such knowledge, Plaintiffs rely on approximately 11 customer reports about issues with the Bike seat post and/or the seat that allegedly were made on different social media sites or to Peloton's customer service department in the years before Peloton's May 2023 disclosure. Even putting aside the fact that many of these comments are vague and imprecise as to the specific problem the user experienced, the statements cannot demonstrate scienter because Plaintiffs do not allege that they were shared with any of the Individual Defendants or anyone else at Peloton allegedly responsible for the statements challenged in the Complaint—much less in a form that suggested a material product safety issue requiring disclosure to Peloton's investors. "Such allegations are not sufficiently particularized to raise a strong inference of scienter against any individual, much less one whose knowledge may be imputed to the [Company]." *Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020).

Plaintiffs' reliance on four purported confidential witnesses similarly fails because

Plaintiffs do not allege that any CW ever communicated with any Individual Defendant or anyone else whose intent might be imputed to Peloton—let alone that they communicated information contradicting any challenged statement.  Plaintiffs' remaining allegations of scienter are red herrings that have nothing to do with the seat post recall, such as misleading allegations about a program for addressing a cosmetic rust issue ("Project Tinman"); claims about a different recall involving a different Peloton product (the Tread+); and allegations about stock transactions that were neither unusual nor suspicious.  None raise the required "strong inference" of scienter.

<h3 style="text-align:center">BACKGROUND[1]</h3>

### A.    Peloton and the Individual Defendants.

Peloton is a technology-enabled fitness company whose Connected Fitness Products include the Peloton Bike, Bike+, Tread, Tread+, Guide, and Row.  Ex. 1, Q3 2023 Form 10-Q at 25.  The Individual Defendants are current and former Peloton executives.  Compl. ¶¶ 19–25.

### B.    The Peloton Bike and Peloton's Robust Product-Related Risk Disclosures.

This action concerns the voluntary recall of the seat post on the Peloton Bike in May 2023. By the start of the Class Period in 2021, the Bike had been on the market for seven years.  *Id.* ¶¶ 1, 52.  Plaintiffs do not allege that Peloton had any reason to suspect a defect or potential safety issue related to the Bike seat post during that seven-year period.  They acknowledge, however, that Peloton nonetheless issued warnings to investors throughout the Class Period about the risk of recalls and potential product defects.  For example, the Company routinely warned:

- "Our products and services may be affected from time to time by design and manufacturing defects, real or perceived, that could adversely affect our business and result in harm to our reputation."

---

[1] The facts recited here are drawn from the Complaint and "documents incorporated in the complaint by reference," which may be considered by the Court in deciding a motion to dismiss. *Levy v. Maggiore*, 48 F. Supp. 3d 428, 438 (E.D.N.Y. 2014).  Defendants assume the truth of these allegations only for purposes of this motion and reserve the right to dispute any of the allegations.

- "[W]e may be exposed to recalls, product replacements or modifications, write-offs of inventory, property and equipment, or intangible assets, and significant warranty and other expenses such as litigation costs and regulatory fines."

- "[W]e have been, and in the future could be, subject to costs related to product recalls, and we could incur significant costs to correct any defects, warranty claims, or other problems."

Ex. 3, 2021 Form 10-K at 27–28; *see also* Ex. 2, 2020 Form 10-K at 17, 25; Ex. 4, 2022 Form 10-K at 30–31. Peloton cautioned that these risks could "materially and adversely affect[]" Peloton's "business, financial condition, operating results, and future prospects." Ex. 3, 2021 Form 10-K at 14; *see also* Ex. 2, 2020 Form 10-K at 11; Ex. 4, 2022 Form 10-K at 14.

Investors knew and understood that these risks were not hypothetical, as Peloton had announced recalls involving different products—including the Tread+—before the start of the Class Period, a fact noted in Peloton's Class Period risk factors. Compl. ¶ 45; Ex. 3, 2021 Form 10-K at 27. The Complaint contains numerous allegations about the Tread+ recall. *See* Compl. ¶¶ 40–51. Beyond underlining that Peloton investors, including Plaintiffs, were on notice of the risk of recalls prior to and throughout the Class Period, these allegations are irrelevant to this case, as they involve a different product that is unrelated to any of the alleged misrepresentations.

### C.   Approximately 11 People (Out of Millions of Bike Users) Allegedly Raise Issues About the Bike Seat or Seat Post on Social Media Sites or to Unspecified Persons at Peloton.

The Complaint alleges that, in the three years leading up to Peloton's initial May 4, 2023 disclosure of a potential product safety issue with the Bike seat post, approximately 11 people (out of millions) raised concerns regarding the Bike's seat or seat post on different social media sites, such as Reddit, Twitter, and Facebook, and/or by contacting Peloton. *See* Compl. ¶¶ 65–82.

The Complaint does not allege any facts about what caused these issues, and it is not even clear from the allegations that all of them related to the seat post as opposed to other aspects of the Bike. *See id.* Nor does the Complaint allege that any of the social media posts or comments were

shared with any of the Individual Defendants or any other Peloton executive responsible for any of the statements challenged in the Complaint—much less that anyone at Peloton connected the comments and formed the conclusion that they demonstrated a potential product safety issue.

The 11 comments are described in the Complaint as follows:

- In May 2023, after the seat post recall announcement, someone commented on Pelo Buddy, a Facebook page unaffiliated with Peloton, that, "Mine broke a couple years ago. They sent me a new seat and new seat post. No problems since." (*id.* ¶ 66);

- In July 2021, a customer contacted Peloton through unspecified channels to report that his seat post had broken and then reported the same issue to the CPSC, which forwarded the complaint to Peloton (*id.* ¶ 67);

- On October 11, 2021, someone posted on an unidentified Twitter thread that "I broke the Peloton seat, taking it as a sign I am now THICC." (*id.* ¶ 68);

- On March 29, 2022, someone posted on Reddit that their seat post had broken and that they called customer service to report the problem, after which another person replied two months later that their friend's daughter had the same issue (*id.* ¶¶ 69–70);

- On November 11, 2022, a user posted on the Official Peloton Member Page on Facebook that his seat post had snapped, to which another user replied to the post by stating that she had experienced the same issue (*id.* ¶¶ 71–72);

- On January 1, 2023, an unidentified woman contacted Peloton through unspecified channels to report that her seat post had split (*id.* ¶ 74);

- On January 17, 2023, a user posted on the Official Peloton Member Page on Facebook that his seat snapped, after which another user replied to the post by stating that he had experienced the same issue (*id.* ¶¶ 75, 77); and

- On May 16, 2023, after the seat post recall announcement, a Twitter user posted that he had informed @onepeloton "several months ago" that his "seat broke" (*id.* ¶ 82).[2]

---

[2] Plaintiffs allege three other reports on the Internet or to Peloton of issues with the seat or seat post, but there is no indication these reports were communicated publicly or to Peloton before May 4, 2023. Compl. ¶ 65 (May 2023 post on Pelo Buddy, an Instagram account not associated with Peloton, that "my friend's broke in 2020," without an indication that the friend made a report in 2020); *id.* ¶ 79 (May 11, 2023 post referring to undated report); *id.* ¶ 81 (May 12, 2023 post referring to undated report).

### D. Peloton Investigates an Unrelated Cosmetic Oxidation Issue With the Bike and Concludes It Does Not Have Any Impact on Bike Durability or Reliability.

In February 2022, the *Financial Times* reported that, in September 2021, Peloton identified a cosmetic issue involving "a build-up of rust on 'non-visible parts'" of certain Bikes manufactured in Taiwan, including "the inner frame of the seat and handlebars," that "did not affect the product's integrity." *Id.* ¶ 87 & Ex. 5 (*Financial Times* article quoted in Complaint). The article stated that Peloton had launched a program called "Project Tinman" in order to instruct its employees on how to address the cosmetic rust by treating it with a chemical agent. Ex. 5. According to the article, Peloton stated that "120 staff had undertaken 'rigorous testing' on the devices to conclude the rust—which it described as 'cosmetic oxidation'—had 'no impact on a bike's performance, quality, durability, reliability, or the overall member experience.'" *Id.*; *see also* Compl. ¶ 127.

The Complaint pleads no facts disputing Peloton's conclusion that the rust was a purely cosmetic issue that did not affect the structural integrity of the Bike. Nor does it allege any facts demonstrating a connection between "Project Tinman" and any seat post failure, although it asserts that some unidentified social media users "were quick to draw a connection." Compl. ¶ 69.

### E. Peloton Discloses a Potential Safety Issue With the Bike Seat Post.

On May 4, 2023, Peloton announced that it had "identified 35 reports, out of over 2.4 million units sold in the U.S. and Canada, in which the [Bike] seat post ha[d] broken during use." Ex. 1, Q3 2023 Form 10-Q at 44. The Company further disclosed that it had "voluntarily notified the [CPSC] regarding" this "potential product safety issue" and was "cooperating with the CPSC to finalize a voluntary CAP [corrective action plan]." *Id.* at 18, 44. To account for the potential expense, Peloton "accrued $8.4 million of estimated contingent loss expense related to a voluntary corrective action plan." *Id.* at 18; *see also* Compl. ¶¶ 152–53. It also warned:

- "The contingent liability accrual was based on an amount that was deemed probable and estimable" at that time, and "[i]t [wa]s *reasonably possible that any additional accruals*

*for contingent losses related to this matter could be material to the financial statements*," but Peloton was "unable to estimate the amount of such additional losses at th[at] time."

- Peloton might "incur incremental expenses or face other challenges in connection with the implementation of the CAP beyond what [it] ha[d] currently estimated to be probable and reasonably estimable, including if the number of reported incidents materially increases, which may adversely impact [Peloton's] operating results, brand reputation, demand for [its] products, and business."

Ex. 1, Q3 2023 Form 10-Q at 18, 44 (emphasis added).

On May 11, 2023, Peloton and the CPSC jointly announced a voluntary recall of the Bike seat post. Ex. 6, Form 8-K (May 11, 2023). The Company stated that it would offer consumers a free replacement seat post that could be self-installed. *Id.* The CPSC announcement attached to Peloton's recall announcement noted that the CPSC-approved "remedy" was the repair offered by Peloton and directed consumers to contact Peloton on or after May 11, 2023 for information on how to request the free seat post and instructions for installation. *Id.*

The Complaint asserts that this recall was mandatory, not voluntary. But the Complaint nowhere alleges that any of the steps denoting a mandatory recall under the CPSA occurred—*i.e.*, that the CPSC initiated (through a required complaint) a mandatory administrative recall proceeding against Peloton, that an Administrative Law Judge made a finding that the Bike posed a "substantial product hazard," or that the CPSC issued a Commission Order under the CPSA requiring Peloton to publish a mandatory recall notice or commence a recall. *See infra* at pp.15–16 (discussing CPSC recall statutory provisions and regulations).

On May 24, 2023, almost two weeks after the recall announcement, CEO Barry McCarthy stated at a conference that Peloton had received more than 500,000 requests for a replacement seat post, an amount that exceeded expectations. Compl. ¶ 175. On August 23, 2023, Peloton provided an update, stating that it had received "approximately 750 thousand requests for replacement seat posts," which again was "more than [Peloton] expected." Ex. 7, Q4 2023 Shareholder Letter.

Because "[t]he cost of this recall substantially exceeded [Peloton's] initial expectations," the Company accrued an additional $40 million in the fourth quarter of 2023 to cover "actual costs incurred as well as anticipated future recall-related expenses." *Id.*

**F.  Plaintiffs Seek To Turn a Voluntary Recall of the Bike Seat Post Into a Securities Fraud Claim.**

On June 9, 2023, Plaintiffs filed the original complaint in this action.  On November 6, 2023, after the appointment of lead plaintiff and lead counsel, Plaintiffs filed the operative 96-page Complaint, asserting claims under Sections 10(b) and 20(a) of the Exchange Act challenging seven categories of alleged misstatements:  (1) Peloton's risk disclosures concerning potential product safety issues and recalls, Compl. ¶¶ 95, 108, 118, 125, 131, 135, 145; (2) Peloton's loss accrual associated with the seat post corrective action plan, *id.* ¶¶ 152–53; (3) Peloton's description of the Bike recall as "voluntary," *id.* ¶ 155; (4) generalized statements concerning Peloton's commitment to product quality and Member safety, *id.* ¶¶ 93–94, 97–98, 100, 103, 105–07, 110–12, 114, 116–17, 120, 122, 124, 129, 133–34, 137, 139, 141; (5) Peloton's statement that it was working "cooperatively" with the CPSC, *id.* ¶ 149; (6) Peloton's statement on the "cosmetic oxidation" identified in parts of the Bike, *id.* ¶ 127; and (7) Peloton's subscription rates, *id.* ¶¶ 102, 104, 143, 147.  The Complaint asserts that Peloton's stock price was artificially inflated during the Class Period as a result of these purported misstatements and dropped as the "truth" allegedly was revealed to the market.  The entirety of the Complaint is defective.

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court generally must accept the truth of a plaintiff's well-pleaded factual allegations, the Court "need not credit conclusory statements unsupported by assertions of

facts," legal conclusions, or allegations "contradicted either by statements in the complaint itself or by documents upon which [the] pleadings rely, or by facts of which the court may take judicial notice." *Stern v. Rocket Mortg., LLC*, 2023 WL 2742086, at *3 (E.D.N.Y. Mar. 31, 2023).

Securities fraud claims are subject to "heightened pleading requirements." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). First, Rule 9(b) requires that "the circumstances constituting fraud . . . be stated with particularity." *Id.* To do so, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012). Second, plaintiffs must satisfy the PSLRA's "[e]xacting pleading requirements," which serve "[a]s a check against abusive litigation." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Under the PSLRA, plaintiffs must (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" and (2) "state with particularity facts giving rise to a strong inference that [each] defendant acted with the required state of mind." *Id.* at 321. The Complaint falls far short of these exacting standards.

## I.    PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISREPRESENTATION OR OMISSION.

To state a Section 10(b) claim, Plaintiffs must plead "with particularity" that each Defendant made a material misrepresentation or omission. *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462–63 (2d Cir. 2019); 15 U.S.C. § 78u–4(b)(1). None of Plaintiffs' various categories of alleged false statements demonstrates this essential element of a Section 10(b) claim.

### A.    Plaintiffs Do Not Allege Facts Establishing That the Risk Disclosures Were False or Misleading.

Plaintiffs challenge Peloton's Class Period risk disclosures issued between May 2021 and November 2022 warning investors of risks relating to product defects and recalls, such as the

Company's warning that its "products and services may be affected from time to time by design and manufacturing defects, real or perceived, that could adversely affect [Peloton's] business and result in harm to [its] reputation."  Compl. ¶ 95; *see also id.* ¶¶ 108, 118, 125, 131, 135, 145. Although Plaintiffs concede that these disclosures warned investors of precisely the kinds of risks that materialized, Plaintiffs assert that the disclosures were nonetheless false and misleading because they did not specifically mention the potential product safety issue involving the Bike seat post or predict that Peloton would later recall the Bike seat post.  Plaintiffs' theory fails because the risk disclosures were accurate at the time they were made and Peloton had no obligation to speculate about seat post recall risks that had not yet materialized.

Risk disclosures "have only rarely been found to be actionable by themselves," *Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at *6 (S.D.N.Y. July 16, 2020)—and only when, among other requirements, the warned-of risks have already materialized.  *Nurlybayev v. ZTO Express (Cayman) Inc.*, 2021 WL 1226865, at *7 (S.D.N.Y. Mar. 31, 2021).  That certain risks "eventually happened" does not make earlier risk disclosures actionable—it "means that [those disclosures] were true" at the time they were made.  *In re Allergan PLC Sec. Litig.*, 2019 WL 4686445, at *21 (S.D.N.Y. Sept. 20, 2019).  Plaintiffs here fail to allege that any risk relating to the seat post had already materialized at the time these disclosures were made.  The disclosures consequently are not actionable.  *See Nurlybayev*, 2021 WL 1226865, at *7 (risk had not materialized because "adverse effects" had yet to be felt).[3]

---

[3] *Ulbricht v. Ternium S.A.*, 2020 WL 5517313, at *9–10 (E.D.N.Y. Sept. 14, 2020) (motion to dismiss granted where there was no allegation that harm "had already occurred," only that conduct that later gave rise to harm was "already in play"); *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008) (disclosure not inaccurate as it "focused on the risk of loss from regulatory violations that had yet to transpire").

11

Plaintiffs argue that the disclosures were misleading because Peloton *later* announced a recall of the Bike seat post, but this is a classic claim of fraud by hindsight that courts routinely reject because a "lack of clairvoyance simply does not constitute securities fraud." *Acito v. IMCERA Grp.*, 47 F.3d 47, 53 (2d Cir. 1995). Because Plaintiffs do not plead any facts, let alone particularized ones, suggesting that Defendants knew a seat post recall would happen when the Class Period risk disclosures were issued, Defendants cannot be held liable for failing to predict that specific risk. *Allergan*, 2019 WL 4686445, at *21 ("The CAC does not plead any facts, let alone particularized ones, that Allergan knew that a recall was in the works, so it cannot be held liable for not publicly predicting that risk."); *In re Ford Motor Co. Sec. Litig.*, 184 F. Supp. 2d 626, 633 (E.D. Mich. 2001) (no duty to disclose information about possible recall because there is "no duty to disclose predictions that are not substantially certain to hold"). Nor did Peloton have any duty to disclose any increase in product risks after disclosing the risks at issue. "It cannot be that every time a risk increases or decreases, a company must precisely quantify the increase or decrease in its disclosures identifying that risk." *Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 538 (S.D.N.Y. 2020); *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 234 (S.D.N.Y. 2018) (general risk disclosures not misleading because they failed to address "in more granular terms, every eventuality").

In short, "a full review of [Peloton's] public disclosures would have given the investing public the information it needed to make an informed decision about Peloton stock." *Robeco Capital Growth Funds SICAV v. Peloton Interactive, Inc.*, 665 F. Supp. 3d 522, 542 (S.D.N.Y. 2023). Peloton warned investors about product defect and recall risks, informed investors when those risks had been realized, and properly refrained from speculating about unrealized risks. Nothing about these risk disclosures was misleading—let alone fraudulent.

### B.    Plaintiffs Do Not Allege Facts Establishing That the Loss Accrual Was False or Misleading.

Plaintiffs allege that Peloton's May 4, 2023 disclosure that it had accrued an $8.4 million "estimated contingent loss expense" related to the seat post corrective action plan was false and misleading because the accrual subsequently increased.  Compl. ¶¶ 152–54.  The allegation fails to state a claim for at least three independent reasons:  (1) Plaintiffs plead no facts suggesting that the loss accrual was false or misleading at the time it was made; (2) Peloton's statements about expected losses are forward-looking statements protected by the bespeaks caution doctrine; and (3) Peloton's loss estimate is an inactionable opinion.

*First*, Plaintiffs do not allege any facts suggesting that the loss estimate was false "at the time it was made."  *In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 2023 WL 3628244, at *6 (E.D.N.Y. May 24, 2023); *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 402 (S.D.N.Y. 2020) (no allegation that "the accounting for Mueller's warranty reserves, at the time Mueller estimated the reserves, did not represent a fair estimate of Mueller's probable expenses associated with product repair and replacement").  The fact that losses *subsequently* increase does not render an estimate false or misleading.  *See Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, 2016 WL 1261135, at *11 (S.D.N.Y. 2016) (plaintiffs "failed to plead facts demonstrating that [the] earlier loss reserve provisions were not the product of sincere opinions regarding appropriate loss reserves, notwithstanding the subsequent substantial increase"); *In re CIT Grp. Sec. Litig.*, 349 F. Supp. 2d 685, 690–91 (S.D.N.Y. 2004) ("That defendants later decided to revise the amount of loan loss reserves . . . provides absolutely no reasonable basis for concluding that defendants did not think [initial] reserves were adequate.").  Nor did Peloton suggest that an increase was unlikely; to the contrary, it disclosed that it could incur additional expenses related to the seat post and that it was "reasonably possible" that those amounts "could

be material." Ex. 1, Q3 2023 Form 10-Q at 18, 44. This cautionary language "clearly indicated that [Peloton] did not guarantee that [the accrual] would be adequate over time." *CIT*, 349 F. Supp. 2d at 689–90.

**Second**, Peloton's accrual is protected by the bespeaks caution doctrine, which immunizes "forward-looking statements that adequately disclose the risk factors that might cause a different outcome to occur than the one then forecast by the issuer." *Lopez v. CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 39 (S.D.N.Y. 2016). "A forward-looking statement accompanied by sufficient cautionary language is not actionable because no reasonable investor could have found the statement materially misleading." *Lematta v. Casper Sleep, Inc.*, 2022 WL 4637795, at *12 (E.D.N.Y. Sept. 30, 2022). Peloton's estimate was plainly forward-looking because it represented the Company's prediction of future liabilities of uncertain timing or amount. *See, e.g.*, *In re 3M Co. Sec. Litig.*, 2021 WL 4482987, at *16 (D. Minn. Sept. 30, 2021) ("[L]ike reserves, accruals are estimates of liabilities an entity will pay in the future."); *In re Aegon N.V. Sec. Litig.*, 2004 WL 1415973, at *12 (S.D.N.Y. June 23, 2004) ("[S]tatements whose truth cannot be ascertained until some time after the time they are made are 'forward-looking statements.'"). Peloton accompanied the estimate with meaningful cautionary language—including that the accrual was "estimated" and "contingent"; that the accrual could materially increase; that Peloton was unable to estimate the amount of additional losses; and that additional information about risks could be found in the Company's risk factors. Ex. 1, Q3 2023 Form 10-Q at 18, 44. As a result, the accrual is not actionable. *See Lematta*, 2022 WL 4637795, at *12 (bespeaks caution doctrine applied when company "repeatedly warned that it may not achieve its planned growth and outlined the risks associated with [such] statements"); *Coronel v. Quanta Capital Holdings Ltd.*, 2009 WL 174656,

14

at *17–18 (S.D.N.Y. Jan. 26, 2009) ("[N]o reasonable investor could have considered the . . . estimate as a guarantee of much other than a rough account of initial estimated losses.").

*Third*, the estimate is an inactionable opinion because determining the amount of loss reserves "is inherently subjective" and "estimates will vary depending on a variety of predictable and unpredictable circumstances." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011); *Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 222–29 (S.D.N.Y. 2020) ("loss reserves are statements of opinion"). To plead a claim based on an opinion, Plaintiffs must demonstrate that Peloton "did not hold the belief [it] professed" or "omit[ted] material facts about [its] inquiry into or knowledge concerning [the opinion]" that "conflict with what a reasonable investor would take from the statement itself." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185–89 (2015). Plaintiffs allege neither.

### C. Plaintiffs Do Not Allege Facts Establishing That the Description of the Bike Seat Post Recall as "Voluntary" Was False or Misleading.

Plaintiffs challenge Peloton's May 2023 announcement that it was conducting a "voluntary recall" of the Bike "in cooperation with" the CPSC. Ex. 6, Form 8-K (May 11, 2023). Plaintiffs assert that this statement was false and misleading because McCarthy, speaking colloquially at a conference, stated that the CPSC "mandated" the recall. Compl. ¶¶ 155–56, 174. Notwithstanding Plaintiffs' effort to transform this informal remark into proof of fraud, the theory fails as a matter of law because the recall was not mandatory under the CPSA and applicable CPSC regulations.

A "mandatory" recall has a precise legal definition. It can occur only after the CPSC commences a public administrative adjudication against a manufacturer and issues an order, based on a factual record, determining that (i) the product presents a "substantial product hazard"; (ii) a public notice is "required in order to adequately protect the public"; and (iii) a remedy (repair, replacement, or refund) is in the public interest. 15 U.S.C. § 2064(a), (c)–(d). Any recall other

15

than one conducted pursuant to such an adjudicated Commission Order is, by definition under the CPSA, a "voluntary recall." As the CPSC has explained, while "[t]he Commission has the authority to order mandatory recalls of products," "almost all recalls overseen by the Commission are jointly conducted by firms and the Commission on a voluntary basis" pursuant to a "corrective action plan" that has "no legally binding effect." *See* 78 Fed. Reg. 69,793, 69,795 (Nov. 21, 2013); *compare* 16 C.F.R. § 1115.20 (outlining voluntary remedial actions and corrective action plans), *with* 16 C.F.R. § 1115.21 (describing how the CPSC may seek an "adjudicated Commission Order" as a "[c]ompulsory remedial action[]"); *see also* 16 C.F.R. § 1102.6(b)(10) ("voluntary recall notice" means "any notice to the public by the [CPSC] relating to a voluntary corrective action, including a voluntary recall of a consumer product, taken by a manufacturer in consultation with the [CPSC]").

Plaintiffs do not allege that the CPSC commenced an administrative proceeding seeking to order a mandatory recall of the Bike, nor can they; the CPSC never commenced any action to issue an administrative complaint. Nor does the CPSC's announcement of the recall make any reference to such a proceeding or to the recall being mandated by the CPSC. Ex. 6, Form 8-K (May 11, 2023). McCarthy's informal reference to the CPSC having "mandated" a recall does not change the legal status of the recall. Because Peloton's statement that the recall was voluntary was accurate, Plaintiffs' claim fails as a matter of law. *Robeco*, 665 F. Supp. 3d at 541 (falsity allegations were "not borne out by the totality of the facts alleged and need not be credited").

### D. Plaintiffs Do Not Allege Facts Establishing That the Challenged Statements on Member Safety and Product Quality Were False or Misleading.

Plaintiffs challenge statements regarding Peloton's commitment to its Members, safety, and product quality, including statements that the Company has a "Members-first mindset," that "safety is the highest priority for us," and that Peloton offers "the best product experience" and

"the best Bikes." Compl. ¶¶ 93–94, 97–98, 100, 103, 105–07, 110–12, 114, 116–17, 120, 122, 124, 129, 133–34, 137, 139, 141. These statements cannot support a securities fraud claim because Plaintiffs do not allege falsity and the statements are not actionable as a matter of law.

As to falsity, Plaintiffs do not allege any facts showing that Member safety, product quality, and product experience were not Peloton priorities. *See City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 68–69 (2d Cir. 2012) (complaint was "devoid even of conclusory allegations that defendants did not believe in their statements of opinion"). If anything, the Complaint suggests the opposite, conceding that Peloton announced a voluntary seat post recall after receiving just 35 complaints of potential product safety issues out of millions of Bikes sold.

Even if Plaintiffs could plead falsity, these statements of corporate culture and optimism are inactionable as a matter of law. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) ("[G]eneral statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery.'"); *ECA, Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*, 553 F.3d 187, 205–06 (2d Cir. 2009) (statements touting "highly disciplined" risk management and "standard-setting reputation for integrity" not actionable); *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("expressions of puffery and corporate optimism do not give rise to securities violations"); *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 412 F. Supp. 3d 206, 221 (E.D.N.Y. 2019) (statements that company was "leading retailer of premium sneakers" and "preferred destination for the best footwear" not actionable).

### E.    Plaintiffs Do Not Allege Facts Establishing That the Statement on Working "Cooperatively" With the CPSC Was False or Misleading.

Plaintiffs challenge a February 2023 statement in which Peloton noted that it was working "cooperatively with the CPSC to further enhance the safety of [its] products." Compl. ¶ 149. Plaintiffs contend that the statement was misleading because Peloton "failed to immediately

report" the seat post issue to the CPSC.  *Id.* ¶ 150.  The theory fails because Plaintiffs allege no facts establishing that Peloton delayed in reporting this issue.  Moreover, Plaintiffs do not dispute that Peloton *voluntarily notified* the CPSC of the seat post issue and worked *in cooperation* with the CPSC on a corrective action plan—facts that demonstrate that Peloton was, in fact, working "cooperatively" with the CPSC.  *See id.* ¶ 152.

## F.    Plaintiffs Do Not Allege Facts Establishing That the Statements Concerning "Project Tinman" Were False or Misleading.

Plaintiffs challenge February 2022 statements about "Project Tinman," which were reported in media outlets including the *Financial Times*, in which Peloton allegedly explained that its "internal testing" had confirmed that the "cosmetic oxidation issue would have no impact on a Bike's performance, quality, durability, reliability, or the overall Member experience" and that it had "not found evidence or received Member complaints that this specific issue ha[d] presented a problem."  Compl. ¶ 127; *see also* Ex. 5.  Plaintiffs assert that these statements were misleading because they failed to disclose the seat post issue, but the Complaint pleads no facts demonstrating that the cosmetic rust addressed in "Project Tinman" is related to any structural problem with the Bike's seat post whatsoever.

Plaintiffs allege no facts suggesting that the oxidation issue was anything but "cosmetic." Not one factual allegation disputes Peloton's conclusion that the issue "would have no impact on a Bike's performance, quality, durability, reliability, or the overall Member experience."  Compl. ¶ 127.  Although Plaintiffs conflate the two issues in an effort to manufacture a fraud claim, the only alleged nexus between the cosmetic rust at issue in "Project Tinman" and reports of broken seats or seat posts is that unspecified and anonymous social media users were "quick to draw a connection" between the two for unspecified reasons.  *See id.* ¶ 69.  If the requirement that a plaintiff plead particularized *factual* allegations demonstrating falsity means anything, it means

that a securities fraud claim cannot be based on the speculation of anonymous people commenting on Reddit. *Cf. In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 246 (S.D.N.Y. 2020) (CWs "must be described . . . with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged").

### G.    Plaintiffs Do Not Allege Facts Establishing That the Statements Concerning the Company's Subscriptions Were False or Misleading.

Plaintiffs challenge four statements concerning Peloton's member subscription rate. Compl. ¶¶ 102, 104, 143, 147.  None is actionable.

The first two statements—former CEO Foley's assertions that "[e]verything we do at Peloton is designed to keep our members engaged and our churn rate low" and "[w]e will continue to prioritize subscription growth over near-term profitability," *id.* ¶¶ 102, 104—do not state a claim because Plaintiffs do not allege any facts demonstrating that the statements were false (*i.e.*, that Peloton did not, in fact, seek to keep its churn rate low or prioritize subscription growth over near-term profitability).  Moreover, as "[g]eneral declarations" of Peloton's aspirational goals, the statements are also inactionable. *Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 103 (2d Cir. 2021).

The third statement—McCarthy's assertion that it was his "goal" "to turn around Peloton and position it for sustained growth and scale" and that the Company was "beating" his estimate as to the timing of such turnaround, Compl. ¶ 143—does not state a claim because Plaintiffs do not allege any facts demonstrating that the statement was false (*i.e.*, that McCarthy did not maintain this goal and belief at the time these statements were made).  Regardless, a statement about corporate optimism and opinion is inactionable. *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *19 n.14 (S.D.N.Y. Apr. 2, 2020) ("Statements about [company's] progress with respect to certain goals, including it being 'on track,' . . . constitute inactionable puffery.").

19

Similarly, although Plaintiffs attempt to challenge a fourth statement—CFO Coddington's assertion on the Q2 2023 earnings call that Peloton did not expect "significant changes" to its subscription levels, Compl. ¶ 147—the Complaint pleads no facts establishing that it was false (*i.e.*, that Peloton, in fact, expected significant changes to subscription levels). The statement is also immune from liability under the PSLRA safe harbor, 15 U.S.C. § 78u–5(c)(1), and the bespeaks caution doctrine because it is a forward-looking statement accompanied by meaningful cautionary language. *In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at \*12–13 (S.D.N.Y. Mar. 30, 2018) (statements "project[ing] future results and incorporat[ing] language, such as the words 'expect' and 'expectation,'" are "clearly forward-looking"); Ex. 8, Q2 2023 Earnings Call at 4 (comments "reflect management's views as of today only and will include statements related to [Peloton's] business that are forward-looking statements under federal securities laws," such that "[a]ctual results may differ materially"). Furthermore, a defendant's statements "about what they 'think,' 'believe,' and 'expect' to occur in the future are inactionable statements of opinion or belief." *Adient*, 2020 WL 1644018, at \*17.

### H.    Plaintiffs Do Not Allege Facts Establishing a Violation of Regulation S-K.

Plaintiffs argue that Defendants had a duty to disclose the seat post issue and recall under Items 105 and 303 of SEC Regulation S-K. Compl. ¶¶ 157–60. Item 303 requires disclosure "where a trend, demand, commitment, event or uncertainty is both (1) presently known to management and (2) reasonably likely to have material effects on the registrant's financial condition or results of operations." *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 180 (S.D.N.Y. 2023); *see also* 17 C.F.R. § 229.303. "Item 105 . . . requires disclosure of the most significant risk factors associated with the security." *DraftKings*, 650 F. Supp. 3d at 180; *see also* 17 C.F.R. § 229.105. Plaintiffs' Regulation S-K theory fails for multiple reasons.

*First*, Plaintiffs fail to plead that Defendants knew of a material risk or material uncertainty presented by the potential product safety issue prior to May 2023 and fail even to articulate when a duty to disclose supposedly arose under Items 105 or 303. The Complaint also fails to allege any facts suggesting that the few customer complaints allegedly posted on different sites on the Internet before May 2023 amounted to one of "the most significant risk factors" for Peloton, *DraftKings*, 650 F. Supp. 3d at 180, or evidenced a "known trend or uncertainty" likely to have a material impact, *Gordon v. Tencent Music Entm't Grp.*, 2021 WL 9183821, at *7 (E.D.N.Y. Mar. 31, 2021) ("existence of an investigation" does not establish that company expected "it would later incur fines or liabilities (or both) that would impact its future financial results materially").

*Second*, Peloton satisfied any obligations under Items 105 and 303 by disclosing the risk of product defects and related recalls in its risk disclosures before and during the Class Period. *See supra* at pp.4–5; *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 34, 39 (2d Cir. 2017) ("repeated warnings that [company's] business was generally vulnerable to changing regulations" satisfied obligations); *Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 379 (E.D.N.Y. 2022) (disclosing "risk that an accident could cause a material adverse effect on [company's] business" satisfied obligations under Regulation S-K); *Ong*, 294 F. Supp. 3d at 235 (similar).[4]

## II.    PLAINTIFFS FAIL TO PLEAD SCIENTER.

The Complaint fails for the independent reason that Plaintiffs do not meet the high bar for pleading scienter under the PSLRA, which requires that Plaintiffs state "with particularity facts giving rise to a strong inference" that each Defendant acted with "the required state of mind." 15

---

[4] The Supreme Court is currently considering the extent to which a violation of Regulation S-K can support a claim under Section 10(b). *See Macquarie Infrastructure v. Moab Partners, L.P.*, No. 22-1165 (U.S.). Should the Supreme Court hold that a failure to make a disclosure required under Item 303 cannot support a claim under Section 10(b) absent an otherwise misleading statement, this Court should reject Plaintiffs' allegations on that basis as well.

U.S.C. § 78u–4(b)(2)(A).  To qualify as "strong" within the meaning of the PSLRA, the inference must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010).  To meet this burden, Plaintiffs must allege particularized facts as to "each defendant," *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 181 (E.D.N.Y. 2017), showing "conscious misbehavior or recklessness" or "motive and opportunity to commit fraud."  *ECA*, 553 F.3d at 198.  Where a corporate defendant is concerned, Plaintiffs must not only plead particularized facts showing scienter on the part of particular officers or employees, but also that there is some "connective tissue between those employees and the alleged misstatements."  *Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020).  It is insufficient to "*separately* allege misstatements by some individuals and knowledge belonging to some others where there is no strong inference that, in fact, there was a connection between the two."  *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 440–41 (S.D.N.Y. 2017).  Here, Plaintiffs' scienter allegations fail as to the Individual Defendants and as to Peloton.

### A.    Plaintiffs Fail To Allege Conscious Misbehavior or Recklessness.

To plead conscious misbehavior or recklessness, Plaintiffs must allege with particularity that a Defendant engaged in conduct that was "highly unreasonable" and represented "an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *Ericsson*, 2023 WL 3628244, at *7.  Plaintiffs' allegations fall far short of this exacting standard.

### 1.    Plaintiffs Rely on Impermissible Group Pleading.

As an initial matter, the vast majority of Plaintiffs' scienter allegations are facially defective because they consist of generalized claims about what "Defendants" must have known as a group, rather than factual allegations specific to a particular Defendant.  *See, e.g.*, Compl. ¶¶ 184–89, 193–94, 201, 207–08, 217, 219.  Such allegations are deficient because "[s]cienter

22

must be separately pled and individually supportable as to each defendant; scienter is not amenable to group pleading." *C.D.T.S. v. UBS AG*, 2013 WL 6576031, at *6 (S.D.N.Y. Dec. 13, 2013); *Desyatnikov v. Credit Suisse Grp.*, 2012 WL 1019990, at *7 (E.D.N.Y. Mar. 26, 2012) ("[L]umping of allegations against 'defendants' does not meet the particularity requirements for pleading scienter."). Allegations that "fail to differentiate in any way between" Defendants are "insufficient as a matter of law to establish . . . conscious misbehavior or recklessness." *In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *20 (S.D.N.Y. Oct. 25, 2006). Almost all of Plaintiffs' allegations fail on this basis alone.

### 2. Plaintiffs Fail To Allege Scienter Based on Customer Complaints.

Plaintiffs' principal scienter theory is based on approximately 11 reports of issues with the Bike seat or seat post that allegedly were made on social media and/or communicated to Peloton in the three years leading up to May 2023. *See supra* at p.6. Even putting aside the fact that the Complaint never explains how these 11 reports (out of millions of Bikes sold) would have been enough to signal a significant product safety issue or demonstrate that any challenged statement was misleading, the allegations fail to demonstrate scienter because Plaintiffs do not allege that any of the reports were relayed to anyone responsible for the statements at issue.

Plaintiffs speculate that some reports were "escalated" to unidentified "executives," Compl. ¶¶ 194–98, but they fail to allege any facts showing that the reports were communicated to any Individual Defendant. They also fail to allege facts showing that the reports were communicated to anyone else whose intent might be imputed to Peloton. "Without specific allegations pointing to [each Defendant's] awareness or recklessness, plaintiffs have not alleged fraud with the particularity required by Rule 9(b) and by the securities laws." *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 387 (E.D.N.Y. 2003).

In *Jackson v. Abernathy*, 960 F.3d 94 (2d Cir. 2020), the plaintiff attempted to establish scienter on the part of surgical gown manufacturers and their executives based on allegations that "three employees" knew of problems with the companies' surgical gowns and that "unidentified senior executives" were warned about the problems. *Id.* at 96, 99. The Second Circuit rejected the argument, holding that allegations that "a handful of employees internally raised alarm that the surgical gown had failed several quality-control tests" did not give rise to scienter. *Id.* at 96. As the court explained, "general allegations of warnings made to unidentified senior executives . . . are not sufficiently particularized to raise a strong inference of scienter against any individual, much less one whose knowledge may be imputed to the [corporation]." *Id.* at 99.

The same is true here. Plaintiffs' generalized allegations that unidentified executives supposedly "knew of problems" with the seat post based on a small number of customer complaints do not demonstrate scienter on the part of any Individual Defendant or Peloton. With respect to the Individual Defendants, the allegations fail because there are no facts demonstrating that they were among the executives who supposedly "knew of problems." With respect to Peloton, the allegations fail because Plaintiffs plead "no connective tissue" between the unidentified executives who supposedly "knew of problems" and any Peloton official responsible for "the alleged misstatements." *Id.* at 99; *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 581–82 (S.D.N.Y. 2014) (no scienter without an allegation that "the company's quality controls were brought to the attention of any of the makers of the statements at issue").

Plaintiffs' various attempts to attribute knowledge of seat post reports to the Defendants all fail as a matter of law. For example:

- ***Access to Raw Data.*** Plaintiffs' assertion that the customer complaints were "reasonably available to the Company and its executive leadership," Compl. ¶ 190, falls short because theoretical "access" to raw data does not raise an inference of scienter. *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008);

24

*City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *10 (S.D.N.Y. Jan. 21, 2021) ("[T]he tracking system—and the customer complaints collected therein—amount to a quintessential example of 'raw data' that the Second Circuit held to be insufficient to raise an inference of scienter.").

- ***Corporate Positions.***  Assertions based on Defendants' positions, including that former CEO Foley and former CFO Woodworth received unspecified information as "hands-on managers," Compl. ¶¶ 235–36, are far too vague to support scienter; it is "practically hornbook law" that "accusations" "founded on nothing more than a defendant's corporate position[] are entitled to no weight."  *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *14 (S.D.N.Y. Mar. 30, 2018).

- ***Unspecified Committee Meetings.***  Plaintiffs' allegations about Peloton's "Executive Escalations team" and "Executive Product Safety Committee," Compl. ¶¶ 196–97, are equally defective, as Plaintiffs do not allege that the Individual Defendants, or anyone else allegedly responsible for a challenged statement, served on such a team or committee or received information contradicting any of the statements at issue as a result.  *Nat'l Gen.*, 2021 WL 212337, at *9 ("Simply pleading that unnamed [company] employees attended meetings and prepared reports," without alleging "any of the individual Defendants attended these meetings or accessed these documents," does not suffice).

Plaintiffs also do not explain how knowledge of these reports—less than a dozen complaints out of 2.4 million units sold—would have contradicted any challenged statement. Indeed, even if a company "was aware of reports of a problem and was investigating during the class period," that would not mean that it "knew [a product] would have to be recalled."  *Detroit Gen. Ret. Sys. v. Medtronic, Inc.*, 621 F.3d 800, 808–09 (8th Cir. 2010); *Lululemon*, 14 F. Supp. 3d at 581–82 (allegations of "various quality issues experienced by the company" did "not establish what specific contradictory information the makers of the statements had").

### 3.    Plaintiffs' Other Theories of Scienter Also Fail.

Plaintiffs' other allegations similarly fail to raise a strong inference of scienter.

*CW Allegations.*    Plaintiffs' allegations based on CWs fail to establish scienter, as the Complaint does not allege that any CW had contact with any of the Individual Defendants—much less that they communicated any specific information contradicting the challenged statements.

*Lululemon*, 14 F. Supp. 3d at 581 (CWs did "not establish what specific contradictory information the makers of the statements had and the connection (temporal or otherwise) between that information and the statements at issue"); *see also Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 217 (2d Cir. 2010) (no scienter where CW "had no knowledge of whether [defendants] actually accessed or reviewed the reports"); *In re Hain Celestial Grp. Sec. Litig.*, 2023 WL 6360345, at *17 (E.D.N.Y. Sept. 29, 2023) (CW allegations "too vague, speculative, and conclusory to support an inference of scienter"); *Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 461 (S.D.N.Y. 2010) (CW allegations insufficient as they did not establish "what specific contradictory information the Individual Defendants received or when"). Nor are there any allegations showing that the CWs communicated with other Peloton executives who had responsibility for the challenged statements and whose intent might be imputed to Peloton. *See, e.g.*, *Silvercreek Mgmt.*, 248 F. Supp. 3d at 440–41 (insufficient to "*separately* allege misstatements by some individuals and knowledge belonging to some others").

**CPSA Requirements.** Plaintiffs assert that "Defendants' knowledge of Peloton's reporting obligations [under the CPSA]" supports an inference of scienter. Compl. ¶ 193. The allegation fails because purported "legal obligations do not establish that the Individual Defendants were actually privy to, or failed to monitor, specific statements or reports contradicting their public statements." *Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011).

**Project Tinman and Complaint Handling Process.** Plaintiffs' allegations about "Project Tinman," Compl. ¶¶ 199–202, and alleged "changes" to Peloton's procedures on customer complaints, *id.* ¶¶ 203–05, do not support scienter for at least three reasons.

*First*, Plaintiffs fail to establish any relationship between the cosmetic oxidation issue that gave rise to "Project Tinman" and any safety issue with the seat post. *See supra* at pp.18–19.

*Second*, Plaintiffs do not allege that any Individual Defendant was involved in or knew of "Project Tinman" or any purported modifications to the customer complaint-handling process. For example, Plaintiffs' allegations about each of the CWs, *see* Compl. ¶¶ 89–90, 204, do not demonstrate any "contact with the individual defendants that would be probative of defendants' mental state." *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 799 n.19 (S.D.N.Y. 2020). Instead, Plaintiffs rely on improper group pleading, referencing the purported knowledge of unnamed "executives," which is deficient. *See Desyatnikov*, 2012 WL 1019990, at *7 (allegations against "defendants" as a group insufficient).

*Third*, the more cogent and compelling inference from the facts alleged is that Peloton acted responsibly to ensure that the oxidation issue was not a safety issue. The Complaint acknowledges Peloton's statement that it performed testing based on "industry standards" that confirmed the cosmetic oxidation issue would have no impact on a Bike's "performance, quality, durability, [or] reliability." Compl. ¶ 127. And Plaintiffs do not allege any facts disputing those findings. Nor do Plaintiffs' claims about Peloton's supposed "modifi[cation]" of its procedures for handling customer complaints based on "a distinction between rust on the joints of the Bike and rust on all other areas" support an inference of scienter. *Id.* ¶¶ 204–05. The most compelling inference from that alleged change is that Peloton chose, out of an abundance of caution, to require additional procedures if rust was near a joint, even if the problem was likely to prove cosmetic:

> It is more reasonable and likely that a publicly traded company, which touts quality as a centerpiece, will want to rectify any quality issues as quickly as possible since quality issues would be (and were) immediately apparent and directly affected sales. It is far less likely (and certainly not cogent and compelling) that the need for quality in order to maintain its brand would lead a company to make intentionally false statements regarding its

27

remediation of quality problems, since doing so could only result in inevitable discovery with defective products on the shelves.

*Lululemon*, 14 F. Supp. 3d at 582–83.

**Defendants' Denials.** Plaintiffs' allegations that Defendants "denied and downplayed the scope of the quality and safety issues surrounding the Bike" are similarly unavailing because they are contradicted by the very materials Plaintiffs cite in the Complaint. Compl. ¶¶ 217–20. For example, while Plaintiffs claim that Defendants minimized the seat post issue by accruing only $8.4 million on May 4, 2023, an amount that was not material, the very same disclosure warned of the possibility that "additional accruals for contingent losses related to this matter *could be material* to the financial statements." Ex. 1, Q3 2023 Form 10-Q at 18, 44 (emphasis added). Far from downplaying any risk, the Company highlighted it. There is thus no basis for Plaintiffs' allegation that Defendants minimized any of the risks at issue—much less in a manner that would raise the requisite "strong inference" of fraudulent intent.

**Unrelated Recalls.** Plaintiffs' allegations about the Tread+ recall and CPSC settlement and other bicycle recalls involving different companies stretching back to 1981, Compl. ¶¶ 207–16, are entirely irrelevant. Scienter cannot be established by making allegations about unrelated matters, past proceedings, and settlements. *See Rotunno v. Wood*, 2022 WL 14997930, at *3 (2d Cir. Oct. 27, 2022) (investigation concerning unrelated conduct did not "add to the plausibility of the scienter allegations"); *KBC Asset Mgmt. NV v. MetLife, Inc.*, 2022 WL 480213, at *2 (2d Cir. Feb. 17, 2022) (settlement of one matter did not raise inference of scienter as to different matter).

**Peloton's "Core Business."** Plaintiffs' assertion that the Bike was at the "core" of Peloton's business also falls flat. Compl. ¶¶ 232–34. "[T]he Second Circuit has expressed doubt as to whether the core operation doctrine has survived" the PSLRA. *In re Pretium Resources Inc. Sec. Litig.*, 256 F. Supp. 3d 459, 474 (S.D.N.Y. 2017). Moreover, even to contribute to an

28

inference of scienter, the operation in question must be so "core" as to "constitute nearly all of a company's business." *Thomas v. Shiloh Indus., Inc.*, 2017 WL 1102664, at *4 (S.D.N.Y. Mar. 23, 2017). Here, Plaintiffs do not allege facts showing that the Bike constitutes "nearly all" of Peloton's business; they concede the opposite, admitting that Peloton's revenue comes from various sources, including other Connected Fitness Products and subscriptions. Compl. ¶¶ 2–3; *see, e.g.*, *Rockwell*, 2018 WL 1725553, at *14 (rejecting "core operations" doctrine absent particularized allegations about portion of company's business dependent on product at issue).

### B.    Plaintiffs Fail To Allege Motive or Opportunity To Commit Fraud.

Plaintiffs' motive and opportunity allegations also fail to establish scienter. To establish motive based on stock transactions, as Plaintiffs attempt to do, the Complaint must plead facts establishing that the transactions were "unusual" or "suspicious." *Gagnon v. Alkermes PLC*, 368 F. Supp. 3d 750, 772 (S.D.N.Y. 2019). No such facts are pleaded here.

Coddington's stock sales challenged in the Complaint cannot support scienter, Compl. ¶ 231, because each of these transactions was made either "for the sole purpose of covering . . . tax liability" (Ex. 9, June 14, 2023 Form 4) or pursuant to a pre-arranged 10b5-1 trading plan (Ex. 10, June 15, 2023 Form 4; Ex. 11, July 17, 2023 Form 4; Ex. 12, August 15, 2023 Form 4).[5] *See In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (stock sales to meet tax obligations are not indicative of fraud); *Lululemon*, 14 F. Supp. 3d at 585 ("Trades made pursuant to a Rule 10b5-l trading plan do not give rise to a strong inference of scienter.").

Foley and Cortese are not alleged to have sold Peloton stock during the Class Period, which "undermines plaintiffs' motive allegations." *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266,

---

[5] The Court may take judicial notice of Form 4 filings in deciding a motion to dismiss. *See, e.g.*, *Chapman*, 466 F. Supp. 3d at 411.

289 (S.D.N.Y. 2006). Instead, they allegedly pledged Peloton stock as collateral for personal loans. Compl. ¶¶ 221–28. By securing loans using Peloton stock, Foley and Cortese sought to keep (not sell) their shares, and thus these transactions do not form "a basis for establishing motive." *Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 114 (D. Conn. 2005); *Mechel*, 811 F. Supp. 2d at 868–69 (pledging stock inconsistent with allegation that defendants "knew" price would decline). Stock pledges are "analogous to stock ownership," not stock sales. *Johnson*, 399 F. Supp. 2d at 114. At most, the allegations suggest that Foley and Cortese would have been motivated to "keep stock prices high to avoid triggering liabilities," which is a goal "possessed by virtually all corporate insiders" and "not a sufficient basis for scienter." *Turner v. MagicJack VocalTec, Ltd.*, 2014 WL 406917, at *10 (S.D.N.Y. Feb. 3, 2014).

### C.     Plaintiffs Do Not Allege a Strong Inference of Scienter as to Peloton.

Finally, because Plaintiffs fail to "plead scienter with respect to any" Individual Defendant and "assert no specific corporate scienter allegations independent from their claims" against the Individual Defendants, their scienter allegations against Peloton necessarily fail. *Kasilingam v. Tilray, Inc.*, 2021 WL 4429788, at *13 (S.D.N.Y. Sept. 27, 2021).

## III.    PLAINTIFFS' SECTION 20(a) CLAIM SHOULD BE DISMISSED.

Section 20(a) liability is "predicated on a primary violation of securities law." *Rombach*, 355 F.3d at 177–78. Plaintiffs' failure to state a Section 10(b) claim thus mandates dismissal of their Section 20(a) claim. *ATSI*, 493 F.3d at 108. The claim also fails because of the absence of factual allegations establishing that any Defendant "culpably participated" in the alleged fraud, a requirement "similar to the scienter requirement of Section 10(b)." *Levy*, 48 F. Supp. 3d at 461.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

New York, New York
Dated: February 2, 2024

Respectfully submitted,

COVINGTON & BURLING LLP

*/s/ Mark P. Gimbel*
Mark P. Gimbel
Jordan S. Joachim
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
mgimbel@cov.com
jjoachim@cov.com

*Attorneys for Defendants*