**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JIA TIAN and DAVID FEIGELMAN, individually and on behalf of all others similarly situated,

                Plaintiffs,

      v.

PELOTON INTERACTIVE, INC., JOHN FOLEY, BARRY MCCARTHY, JILL WOODWORTH, ELIZABETH F. CODDINGTON, THOMAS CORTESE, and HISAO KUSHI,

                Defendants.

Case No. 1:23-cv-04279-MKB-JRC

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

COVINGTON & BURLING LLP
Mark P. Gimbel
Robert C. Gianchetti
Jordan S. Joachim
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
mgimbel@cov.com
rgianchetti@cov.com
jjoachim@cov.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 1

I.     PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT. ...................... 1

         A.     Peloton's Class Period Risk Disclosures Were Not False or Misleading. .............. 1

         B.     Peloton's May 2023 Seat Post Loss Accrual Was Not False or Misleading. ......... 2

         C.     The Statements on Member Safety and Product Quality Were Not False or Misleading .......................................................................................................... 4

         D.     Peloton's Statement About "Project Tinman" Was Not False or Misleading .......................................................................................................... 5

         E.     The Statements on Alleged Churn Were Not False or Misleading......................... 6

II.     THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER. ............................................................................................................... 7

         A.     Plaintiffs Still Do Not Demonstrate a Strong Inference of Conscious Misbehavior or Recklessness. ............................................................................ 7

         B.     Plaintiffs' Motive and Opportunity Allegations Remain Insufficient. ................. 11

         C.     Plaintiffs' Corporate Scienter Allegations Remain Defective. ............................ 12

CONCLUSION..................................................................................................................... 12

i

## TABLE OF AUTHORITIES

**Cases**

*Bazzelle v. Novocure Ltd.*,
2025 WL 843668 (S.D.N.Y. Mar. 18, 2025) ................................................................9

*In re BHP Billiton Ltd. Sec. Litig.*,
276 F. Supp. 3d 65 (S.D.N.Y. 2017)................................................................4

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)................................................................6

*In re Dentsply Sirona, Inc. Sec. Litig.*,
665 F. Supp. 3d 255 (E.D.N.Y. 2023) ................................................................5

*Eden Alpha CI LLP v. Polished.com Inc.*,
763 F. Supp. 3d 270 (E.D.N.Y. 2025) ................................................................7, 8, 9

*In re Gildan Activewear, Inc. Sec. Litig.*,
2009 WL 4544287 (S.D.N.Y. Dec. 4, 2009) ................................................................12

*In re Henry Schein, Inc. Sec. Litig.*,
2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) ................................................................5

*Howard v. Arconic Inc.*,
2021 WL 2561895 (W.D. Pa. June 23, 2021)................................................................5

*In re iQIYI, Inc. Sec. Litig.*,
2024 WL 4362509 (E.D.N.Y. Sept. 30, 2024) ................................................................10

*Jackson v. Abernathy*,
960 F.3d 94 (2d Cir. 2020)................................................................12

*Kusnier v. Virgin Galactic Holdings, Inc.*,
639 F. Supp. 3d 350 (E.D.N.Y. 2022) ................................................................5

*Lematta v. Casper Sleep, Inc.*,
2022 WL 4637795 (E.D.N.Y. Sept. 30, 2022) ................................................................5

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ................................................................8, 9

*Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014)................................................................8

*Meyer v. Jinkosolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014)................................................................2

*Stadium Cap. LLC v. Co-Diagnostics, Inc.*,
    2024 WL 456745 (S.D.N.Y. Feb. 5, 2024)................................................................2

*TCP Diversified Tech. Fund v. Gaotu Techedu Inc.*,
    2025 WL 416872 (E.D.N.Y. Feb. 6, 2025)................................................................2

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008)................................................................9

*In re The Hain Celestial Grp. Inc. Sec. Litig.*,
    2019 WL 1429560 (E.D.N.Y. Mar. 29, 2019)................................................................9

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    625 F. Supp. 3d 164 (S.D.N.Y. 2022)................................................................11

*In re Vale S.A. Sec. Litig.*,
    2020 WL 2610979 (E.D.N.Y. May 20, 2020) ................................................................4

*In re Virtu Fin., Inc. Sec. Litig.*,
    770 F. Supp. 3d 482 (E.D.N.Y. 2025) ................................................................2, 5

**INDEX OF DEFINED TERMS**

| | |
|---|---|
| Brief or Br.: | Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint, dated May 21, 2025 (ECF No. 50-1) |
| Class Period: | May 6, 2021 through and including August 22, 2023 (same Class Period as the FAC) |
| Company or Peloton: | Peloton Interactive, Inc. |
| Confidential Witnesses or CW(s): | Confidential Witness(es), as identified in the Second Amended Complaint |
| CPSC: | U.S. Consumer Product Safety Commission |
| Defendants: | The Individual Defendants and the Company |
| EPSC: | Peloton's Executive Product Safety Committee |
| Exhibits or Ex.: | Exhibits attached to the Declaration of Mark P. Gimbel, dated May 21, 2025, which are public filings and statements and are incorporated into the Second Amended Complaint and/or subject to judicial notice (ECF Nos. 50-2–50-14) |
| First Amended Complaint or FAC: | First Amended Class Action Complaint, filed November 6, 2023 (ECF No. 23) |
| Individual Defendants: | John Foley, Barry McCarthy, Jill Woodworth, Elizabeth Coddington, Thomas Cortese, and Hisao Kushi |
| Member(s): | Active users and subscribers of Peloton's fitness platform |
| Decision or Op.: | Memorandum & Order, issued February 14, 2025 (ECF No. 41) |
| Mot.: | Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' First Amended Complaint, filed May 17, 2024 (ECF No. 35-1) |
| Opp. or Opposition: | Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, dated June 30, 2025 (ECF No. 51) |
| Plaintiffs: | Lead Plaintiffs Jia Tian and David Feigelman |

iv

| | |
|---|---|
| Q1, Q2, Q3, or Q4: | Quarterly periods, starting with the first quarter of a fiscal year through the fourth quarter of the fiscal year.  Peloton's fiscal year begins on July 1 of the prior calendar year; *i.e.*, fiscal year 2021 began July 1, 2020 and fiscal year 2022 began July 1, 2021. |
| Second Amended Complaint or SAC: | Second Amended Class Action Complaint, filed April 11, 2025 (ECF No. 44) |

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition argues that the SAC pleads a "groundswell of particularized facts" showing that Peloton misled investors about the risks and consequences of its voluntary seat post recall, but the new complaint simply embellishes the same flawed theories of falsity and fraudulent intent this Court previously rejected. Plaintiffs rehash irrelevant allegations about the Tread+ recall and cosmetic rust and seek to distract from the SAC's deficiencies by citing vague and irrelevant statements from new CWs. But none of these allegations, nor any of Plaintiffs' recycled arguments, is sufficient to plead a material misstatement or raise a "strong inference" of scienter.

Plaintiffs argue that the SAC adds "new context," but no amount of context can resuscitate claims based on immaterial puffery or forward-looking statements that this Court has ruled are not actionable as a matter of law. Nor do Plaintiffs' new allegations demonstrate that any other statement was false or misleading at the time it was made. Like the previous complaint, the SAC does not plead facts establishing that the risk of a seat post recall had already materialized when the challenged statements were issued. Plaintiffs' scienter allegations also remain deficient. The SAC introduces irrelevant claims from "*eighteen*" CWs. But quantity does not equal quality. The SAC still fails to identify facts known to any Defendant that contradicted any challenged statement. Plaintiffs instead resort to the same arguments that this Court rejected about generalized motives and access to information, but they are no more persuasive the second time around. Plaintiffs' complaint should be dismissed—this time with prejudice.

**ARGUMENT**

**I.    PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT.**

**A.    Peloton's Class Period Risk Disclosures Were Not False or Misleading.**

Plaintiffs again assert that Peloton's disclosures warning of the risk of real or perceived "design and manufacturing defects" were misleading because they failed to inform investors that

1

the Bike was "already experiencing" such "defects." Opp. 15, 17. The Court previously rejected this theory, reasoning that Plaintiffs' allegations of a small number of complaints about the Bike seat failed to establish "that Defendants knew a seat post recall would happen when they made the risk disclosures." Op. 20–22. The SAC does nothing to address this pleading deficiency.

Plaintiffs argue that Peloton was aware of reports of cosmetic rust and other issues at the time of the risk disclosures (Opp. 16), but there are no facts tying these issues to "*design [or] manufacturing* defects" of the type Peloton warned about. *See id.* 15.[1] The SAC does not allege any facts showing that the cosmetic rust reported in the press in February 2022—or the remedy of removing it and repainting the Bike (*i.e.*, Project Tinman)—were connected to an actual or perceived manufacturing defect or to the reports of seat posts breaking that led Peloton to announce a voluntary product recall over a year later. Thus, unlike the cases Plaintiffs cite,[2] there are no allegations establishing that Peloton misleadingly warned of a risk that had already materialized.[3] The Company's risk factors are therefore not actionable.

B.    **Peloton's May 2023 Seat Post Loss Accrual Was Not False or Misleading.**

The SAC adds no new allegations relating to Peloton's May 2023 loss accrual. Plaintiffs simply argue again that Peloton's initial loss accrual was misleading because it later increased.

---

[1] The SAC pleads no facts establishing any seat "slippage," Opp. 17, was a material defect, let alone related to the recall, which concerned seat posts *breaking*—not slipping.

[2] *In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d 482, 517–18 (E.D.N.Y. 2025) (financial services company "present[ed] as a risk" specific misuse of client information "that ha[d] already transpired"); *TCP Diversified Tech. Fund v. Gaotu Techedu Inc.*, 2025 WL 416872, at *8 (E.D.N.Y. Feb. 6, 2025) (Beijing-based company had "specific nonpublic information" about "forthcoming [Chinese regulations'] detrimental impact on" defendant's business); *Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, at *2 (S.D.N.Y. Feb. 5, 2024) (misleading to present outlook for diagnostic tests as "fluctuating" when "sales ha[d] already cratered").

[3]*Jinkosolar* is distinguishable because there the defendant made "comforting statements . . . about compliance measures," while failing to disclose "serious pollution violations"—misleading statements that could not be cured by warning of the risk of non-compliance. *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014).

Opp. 21.  This is a patently defective claim of fraud by hindsight that fails for the same reasons the Court identified in its previous Decision.  *See* Op. 24.

*First*, as the Court explained, "[e]ven if Defendants' statements about the loss accrual 'falsely represented Defendants' then-present loss estimation,'" the statements would still be protected by the bespeaks caution doctrine because they were accompanied by meaningful cautionary language, including a warning that the accrual could materially increase.  *Id.* 25. Plaintiffs argue that "the risk warning was not meaningful" because the risk of an increase was framed as a "mere hypothetical."  Opp. 21.  But Plaintiffs do not point to any facts showing that the risk already had materialized in the form of internal loss estimates exceeding the accrual.  The vague allegation that Peloton "was frequently receiving reports related to the post's defects" (*id.*) does not establish that the Company knew that its initial $8.4 million loss accrual was inadequate when issued.  Nor does it render meaningless Peloton's warning that it was "reasonably possible that additional accruals for contingent losses related to this matter could be material."  Ex. 1 at 18. There is thus no reason to revisit the Court's prior holding that the loss accrual statements "were accompanied by sufficient cautionary language, which alone triggers the safe harbor."  Op. 25.

*Second*, even if the bespeaks caution doctrine were inapplicable, Plaintiffs still have failed to allege falsity.  *See* Br. 15; Mot. 13–14.  The SAC does not plead any facts showing that, by May 4, 2023, Peloton had already projected costs that exceeded the loss accrual.  Plaintiffs argue that "Defendants knew, given the volume of complaints received and Bikes sold, that the accrual was materially understated."  Opp. 20.  But they offer no facts or figures to substantiate this claim. Plaintiffs also insist that the "magnitude" of subsequent increases and their "proximity" to the initial accrual support falsity.  *Id.* 21.  But Plaintiffs raised, and the Court rejected, these same arguments before.  *Compare id.*, *with* ECF No. 36 at 19–20; ECF No. 37 at 3 & nn.1–2.

*Third*, the estimate remains an inactionable statement of opinion.  Br. 15 n.5; Mot. 15.

### C.    The Statements on Member Safety and Product Quality Were Not False or Misleading.

As the Court previously ruled, Peloton's statements "about its corporate values and product safety and quality are not materially misleading" because they are immaterial corporate puffery, which is too general to induce reliance by a reasonable investor.  *See* Op. 29–30.  None of Plaintiffs' new allegations in the SAC or arguments in the Opposition demonstrates otherwise.

Plaintiffs argue that the SAC offers new "context" surrounding these generalized statements that somehow renders them actionable.  *See* Opp. 11, 12.  But this is the same context raised in opposing dismissal of the FAC.  Then, as now, Plaintiffs argued that Peloton touted safety and product quality "to restore customer confidence in [Peloton's] reputation" following the Tread+ recall.  *See* ECF No. 36 at 8–14; Opp. 9, 11.  The Court correctly rejected Plaintiffs' arguments, holding that the statements remain "too general to cause a reasonable investor to rely upon them."  *See* Op. 29–30 (internal citations and quotation marks omitted).[4]

Plaintiffs' cited cases are inapposite.  In *BHP* and *Vale*, the few statements found actionable were "not mere generalities" like those challenged here but "quite specific representations or guarantees of some concrete fact or outcome."  *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 79–80 (S.D.N.Y. 2017) (making affirmative statements "over and over and over"); *In re Vale S.A. Sec. Litig.*, 2020 WL 2610979, at *10–13 (E.D.N.Y. May 20, 2020) (Vale made "specific representations" about specific practices for monitoring dam stability).  Likewise, in *Dentsply*, the

---

[4] Plaintiffs also fail to allege any facts showing that safety, product quality, and member experience were not Peloton priorities.  Plaintiffs claim that "[c]opious complaints" were made on social media regarding "post breakage and seat slipping."  Opp. 10.  But the SAC identifies only the same *11 reports* cited in the FAC—hardly a "copious" number in comparison to over 2 million Bikes sold.  *Compare* SAC ¶¶ 112–29, *with* FAC ¶¶ 65–82; Mot. 5–6.  Plaintiffs also claim that "35 *formal* CPSC reports" were made relating to seat post breaks.  Opp. 10.  But, as is evident from the recall announcement, it is "Peloton [that] ha[d] received 35 reports of the seat post breaking," not the CPSC.  Ex. 6.

court found that specific and repeated statements of a "strong and terrific relationship" with two distributors were not puffery because they were not generalized and were intended to "soften the significant financial impact" of a negative change in business relationships. *In re Dentsply Sirona, Inc. Sec. Litig.*, 665 F. Supp. 3d 255, 284 (E.D.N.Y. 2023); *see also Virtu*, 770 F. Supp. 3d at 504 ("very specific statements" made to "quell a controversy"). Here, the challenged statements are far more general and did not specifically address concerns about the Bike.[5]

### D.    Peloton's Statement About "Project Tinman" Was Not False or Misleading.

Plaintiffs challenge Peloton's February 2022 description of the cosmetic rust issue that prompted "Project Tinman," arguing that it was misleading to describe the rust issue as "isolated" and involving "abnormal" cosmetic oxidation that had no effect on structural areas of the Bike or its quality, durability, or reliability. SAC ¶ 200. The Court previously rejected Plaintiffs' challenge to a similar statement, reasoning that the FAC failed to allege any facts showing "that the internal rust on the Bike that prompted . . . Project Tinman are related to any issues with the Bike's safety or performance." Op. 30. The same reasoning continues to apply.

The Opposition does not identify any allegations in the SAC demonstrating that the cosmetic rust was related to any structural problem with the Bike. Plaintiffs do not allege facts showing that Peloton had concluded internally by February 2022 (or ever) that the cosmetic rust would have an effect on the Bike's quality, durability, or reliability, or any structural areas of the

---

[5] Plaintiffs' other cases are distinguishable as involving concrete and specific representations that were alleged to be demonstrably false. *See Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 373–75 (E.D.N.Y. 2022) (positively describing a specific space flight as "successful," "perfect," and "flawless" not puffery where flight deviated from glide cone and FAA airspace); *Lematta v. Casper Sleep, Inc.*, 2022 WL 4637795, at *9 (E.D.N.Y. Sept. 30, 2022) (highlighting continuing profitability while not disclosing accelerating losses); *Howard v. Arconic Inc.*, 2021 WL 2561895, at *13 (W.D. Pa. June 23, 2021) (emphasizing product promoted building and occupant safety despite "regular practice of selling the [] product for unsafe use"); *In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *12 (E.D.N.Y. Sept. 27, 2019) (claiming market was "highly competitive" and "characterized by . . . intense competition" in response to investor while failing to disclose anticompetitive conduct including colluding with competitors to fix prices and block market entrants).

5

Bike.  Nor do Plaintiffs allege any facts disputing Peloton's conclusion that the cosmetic rust was an isolated issue limited to certain Bikes originating from a specific manufacturer.

As with the FAC, the SAC includes two photographs, allegedly of broken seat posts, that were posted on the internet in March and November 2022—one purportedly showing "rust" and the other "signs of corrosion."  SAC ¶¶ 116, 118.  The only basis Plaintiffs have for linking these photographs and Project Tinman is the speculation of Reddit users.  *Id.* ¶ 116.  Even if such speculation could be credited, it would not establish that Peloton's earlier, February 2022 statement about Project Tinman was misleading at the time it was made.  Nor does the allegation that rust was "inside the Post," *see* Opp. 14, establish any *structural* problem with the Bike related to rust.

Because Plaintiffs still "insufficiently allege any connection between the internal rust issue, Project Tinman, and the Bike's safety and quality," the SAC again fails to establish that any of Peloton's related statements were false or misleading.  *See* Op. 30–31 & n.6.

### E.    The Statements on Alleged Churn Were Not False or Misleading.

As the Court previously held, the challenged statements related to Peloton's churn rates and subscription growth are "inactionable as corporate puffery."  Op. 30.  Unlike the cases Plaintiffs cite, which involve far more specific representations, *supra* pp.4–5 & n.5, "Plaintiffs' claim that these statements were knowingly and verifiably false when made does not cure their generality," which is what renders them immaterial puffery as a matter of law.  *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014).

Plaintiffs also fail to allege falsity.  None of the allegations suggests that any of the speakers was aware *at the time of these statements* of any issues that would increase churn rates or reduce subscription growth.  Only one fact cited in the Opposition (Opp. 19 (citing SAC ¶ 129)) even touches on the issue—the existence of a random Twitter post from May 16, 2023 urging users to cancel their memberships.  Because this tweet was published after the challenged statements at

6

issue (SAC ¶¶ 178, 182, 208, 212), Defendants could not have been aware of it *at the time they made the statements*—let alone have concluded that it demonstrated a risk of churn. The allegation thus fails to demonstrate that any challenged statement was false when made.

## II. THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER.

Like the previous complaint, the SAC does not plead "with particularity facts giving rise to a strong inference that the [D]efendant[s] acted with the required state of mind." Op. 34.

### A. Plaintiffs Still Do Not Demonstrate a Strong Inference of Conscious Misbehavior or Recklessness.

***CW allegations***. Plaintiffs argue that CW allegations establish that McCarthy, Foley, and Cortese had "actual knowledge of the defects," Opp. 22, but the new CW allegations are neither "detailed," *id.* 2, nor sufficient to show that any Defendant had specific information contradicting any challenged statements. Rather, each is "insufficiently particular" in terms of time, context, and details to be credited. *Eden Alpha CI LLP v. Polished.com Inc.*, 763 F. Supp. 3d 270, 298 (E.D.N.Y. 2025) (refusing to credit 11 anonymous witness accounts because they lacked sufficient particularity).

Plaintiffs argue that McCarthy and Foley knew about "structural defects and rust" involving the Bike post based on CW9's statements. Opp. 22. But CW9 merely asserts that Peloton's Escalations team "handled a variety of complaints" (not limited to the Bike) and executives such as Foley and McCarthy would send unspecified complaints to that team if they "were busy." SAC ¶ 76. These vague assertions fail to demonstrate any information contradicting a challenged statement.

Plaintiffs also rely on CW8's and CW10's allegation that McCarthy received and forwarded customer complaints, including complaints about the Bike seat post and rust. Opp. 22. But the SAC does not contain any particularized allegations about these alleged customer

complaints, such as the number of complaints, what they stated, when they were sent or received, whether they provided any reason to believe the issue was material, and how they could have rendered any challenged statement false or misleading. *See, e.g.*, SAC ¶¶ 241 (CW10 hypothesizing that complaints McCarthy saw "would have included Bike post and rust complaints if somebody reached out to [McCarthy] directly about those issues"), 252 (CW8 assuming that McCarthy "read at least some" reports without specifying any example).[6] Because these assertions "do not establish what specific contradictory information the makers of the statements had and the connection (temporal or otherwise) between that information and the statements at issue," they fail to demonstrate scienter. *Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 581 (S.D.N.Y. 2014).

As to Cortese, Plaintiffs argue that he "knew that the Bikes were built of subpar parts," Opp. 23, but the SAC offers no particularized facts supporting that assertion. For example, CW8's claim that Cortese began a "Zero Issues in 60 days" initiative to address product "assembly" issues does not identify the "issues" in question or even whether they related to the Bike or its seat post. SAC ¶ 89. Similarly, CW18's claim that other, lower-level employees knew of "assembly issues due to the Bike parts not fitting" does not show that Cortese knew of or agreed with this observation or drew a connection between it and the seat post. *Id.* ¶ 107. And CW5's assertion that Cortese allegedly was informed at unidentified meetings at unspecified times about "issues with various products" including unidentified "parts . . . not fitting" likewise does not prove that he knew anything contradicting his challenged statements. *Id.* ¶¶ 109, 110.[7]

---

[6] Plaintiffs argue that CW8 and CW10 had contact with the Individual Defendants, but the only contact alleged is that these CWs were on the Escalations team email list to which McCarthy would sometimes forward complaints. SAC ¶¶ 79, 241.

[7] CW5's allegation about Cortese's knowledge of unspecified "issues," SAC ¶ 109, consists of an uncorroborated, anonymous statement sourced secondhand from non-CWs, which courts do not credit, *see Eden Alpha*, 763 F. Supp. 3d at 298. Even if hearsay does not "automatically disqualify" a CW's statement, the statement must be "'sufficiently reliable, plausible, or coherent.'" *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016). CW5's allegation (continued…)

Moreover, it is all but impossible to determine whether any challenged statement was knowingly false *at the time it was made* because each of the CW accounts is insufficiently particular in terms of time. Contrary to Plaintiffs' argument (Opp. 23), the "start and end date of each [CW's] employment"—which are lacking for several CWs—do not "situate in time any alleged improper business practice or statement by the Individual Defendants," making "the task of matching [CW] allegations to contrary public statements all but impossible." *Eden Alpha*, 763 F. Supp. 3d at 298.

***Access to Information***. Plaintiffs continue to rely on generic allegations about Defendants' access to internal reports and customer complaints (Opp. 24–26; SAC ¶ 256) in an effort to manufacture scienter, but these allegations are clearly insufficient. As the Second Circuit has ruled, broad allegations of access to "raw" data do not establish scienter; instead, a plaintiff "must specifically identify the reports or statements containing this information." *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008). The Opposition does not and cannot satisfy this standard, which requires alleging "specific instances in which Defendants received information that was contrary to their public statements." *Bazzelle v. Novocure Ltd.*, 2025 WL 843668, at *24 (S.D.N.Y. Mar. 18, 2025).

***Duty to Monitor***. Plaintiffs cannot establish scienter based on a duty to monitor without specifically identifying information "that would have come to light in a reasonable investigation" and "demonstrated the falsity of the allegedly misleading statements." *Dynex*, 531 F.3d at 196. Here, Plaintiffs' vague reference to "extensive reports of safety and quality defects, and injuries related to the same," Opp. 26, fails "to sufficiently allege that any *specific* contradictory

---

is not sufficiently "specific in time, context, and details" to pass that test. *Id.*; *In re The Hain Celestial Grp. Inc. Sec. Litig.*, 2019 WL 1429560, at *18 (E.D.N.Y. Mar. 29, 2019) (discounting vague CW allegations "based on multiple layers of belief or hearsay").

information would have come to light in a reasonable investigation by Defendants." *In re iQIYI, Inc. Sec. Litig.*, 2024 WL 4362509, at *19 (E.D.N.Y. Sept. 30, 2024) (emphasis added).

**Rust**.  The Court previously ruled that Plaintiffs had failed to establish "any connection between the internal rust issue, Project Tinman, and the Bike's safety and quality."  Op. 31 n.6. Nothing in the SAC or the Opposition alters this conclusion.  Plaintiffs again argue that Project Tinman was a "companywide rust coverup" supporting scienter, Opp. 26, but none of the CWs alleges that rust posed a safety issue.  Nor do Plaintiffs allege that any Individual Defendant drew that conclusion.  Indeed, apart from the patently insufficient allegation that unspecified "members" complained about "rust" to "Customer Support and McCarthy" at unspecified times (SAC ¶ 261), the allegations about rust on which Plaintiffs rely do not even mention the Individual Defendants (*id.* ¶¶ 151, 152, 161, 163, 218, 264, 266).  Nor do they identify any information that would have caused any Defendant to conclude that reports of environmental rust signaled a structural safety issue or were inconsistent with any challenged statement.  Far from establishing a "coverup" of a structural safety problem, the factual allegations of the SAC support the more plausible conclusion that rust was a cosmetic issue caused by exposure to humidity and weather—one which Peloton appropriately addressed by removing the rust and repainting affected parts.  Br. 17–18, 22.

**Alleged Frequent Public Discussion, Denials, and Proximity to Disclosures**.  Contrary to Plaintiffs' argument (Opp. 27–28), the allegations in the SAC that Defendants spoke frequently about the Bike's safety and quality and stated that the rust issue was isolated and had no effect on quality, durability, or reliability, do not support scienter.  None of these allegations demonstrates that Defendants had knowledge of facts contradicting their public statements.  The most compelling inference to draw from the statements is not that Defendants wanted to mislead investors, but that they genuinely believed the Bike *was* safe and high quality and that the rust

issue *was* isolated and cosmetic.  Similarly, the most plausible inference to draw from Peloton's decision to update its loss accrual is not that the initial accrual was intentionally misleading but that the Company was "unable to estimate the amount of . . . additional losses" at the time of the initial accrual, as it cautioned investors by warning that "material" additional accruals were "reasonably possible."  Br. 14.  Plaintiffs allege no facts supporting a contrary inference.

*Core Operations*.  The SAC repeats the same "core operations" allegations as the FAC, and they fail for the same reasons.  The core operations doctrine is not sufficient on its own to plead scienter.  Br. 28.  And, as the Court previously observed, even if Defendants are assumed to have knowledge of issues involving the Bike under this doctrine, that alone would not establish that they knew any challenged statement about the Bike was false or misleading.  Op. 36 n.7.

**B.    Plaintiffs' Motive and Opportunity Allegations Remain Insufficient.**

Plaintiffs' motive allegations remain the same and fail for the same reasons explained in the Court's Decision.  Plaintiffs argue again that Defendants had a motive to "fend off further reputational and operational damage."  Opp. 29.  But as the Court ruled, such generalized and common motives are "not sufficient to support scienter."  Op. 37; *see, e.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 242 (S.D.N.Y. 2022) ("The desire to maintain the profitability of the investment and to avoid governmental and regulatory scrutiny are neither concrete nor personal to the defendants and are common to all corporate officers.").

Without making a single new allegation about Coddington, Plaintiffs also once again attempt to argue that her stock sales support scienter, even though they were made pursuant to a 10b5-1 plan, which rebuts scienter.  Opp. 30; Mot. 29.  Plaintiffs assert, as they did before, that the timing of Coddington's entry into the plan creates suspicion.  Opp. 30.  But as the Court stated, timing does not suffice absent allegations—not present here—that Coddington entered the plan "to take advantage of an inflated stock price."  Op. 38.

11

Plaintiffs likewise recycle their scienter arguments about Cortese and Foley, arguing again that each had a motive because each pledged Peloton stock as collateral.  Opp. 29.  But, as the Court previously held, these pledges are "insufficient to establish scienter."  Op. 38.

**C.      Plaintiffs' Corporate Scienter Allegations Remain Defective.**

Finally, the Court cannot impute scienter to Peloton "from the Individual Defendants, Peloton's senior leadership, and the [EPSC]," as Plaintiffs argue.  Opp. 28.  Scienter cannot be imputed from the Individual Defendants because Plaintiffs have failed to allege that any such defendant had a fraudulent intent.  Scienter cannot be imputed from "senior leadership" or EPSC members because the SAC fails to plead that they had knowledge contradicting a challenged statement.  Moreover, there are no allegations of any "connective tissue between those employees and the alleged misstatements."  *Jackson v. Abernathy*, 960 F.3d 94, 98–99 (2d Cir. 2020).[8]

**CONCLUSION**

For the foregoing reasons, the SAC should be dismissed with prejudice.[9]

---

[8] Plaintiffs also argue that company executives "need only be involved in concealment of the fraud" to support corporate scienter, Opp. 29, but they fail to allege any facts establishing such "concealment."

[9] In seeking leave to amend, Plaintiffs cite a pending FOIA request to the CPSC, but they provide "no indication of the facts that they believe may amplify the allegations of their complaint."  *In re Gildan Activewear, Inc. Sec. Litig.*, 2009 WL 4544287, at *4 (S.D.N.Y. Dec. 4, 2009) (denying leave to amend).  Leave to amend should thus be denied.

12

New York, New York
Dated: July 28, 2025

Respectfully submitted,

COVINGTON & BURLING LLP

*/s/ Mark P. Gimbel*
Mark P. Gimbel
Robert C. Gianchetti
Jordan S. Joachim
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
mgimbel@cov.com
rgianchetti@cov.com
jjoachim@cov.com

*Attorneys for Defendants*

**CERTIFICATE PURSUANT TO LOCAL CIVIL RULE 7.1(c)**

I hereby certify that this Memorandum of Law complies with the length restrictions in the Court's April 30, 2025 Order extending page limits and Local Civil Rule 7.1(c) because it consists of 12 pages, excluding the caption, index, table of contents, table of authorities, signature blocks, and required certificates, and contains no more than 4,200 words, as counted by the Microsoft Word-processing program used to prepare this document.

/s/ Mark P. Gimbel
Mark P. Gimbel